In the matter of the Estate of E. Knight.

# IN THE MATTER OF THE ESTATE OF E. KNIGHT, DECEASED.

An Administrator cannot pay out the money of the estate to remove an incumbrance from the property of the estate, which debt the estate is in no way responsible for.

He is to take care of, manage and preserve the estate committed to him ; but this does not mean that he is, at discretion, to pay off all incumbrances resting on the property, upon the notion that property may increase in value, and thereby a speculation may be made for the estate.

If a case should arise in which a great sacrifice would ensue unless money were paid to discharge an incumbrance, it is not impossible that a Court of Chancery might order the expenditure of the money needed to remove such incumbrance.

If an Administrator undertakes to go beyond the strict line of his duty as the law defines it, he acts upon his own responsibility, and while he can receive no profit from a successful issue of his investment, he must bear the loss of a failure.

The Administrator, in the absence of special authority, must administer the estate as he finds it, paying taxes and other necessary expenses, and doing such other acts as are necessary to preserve it as left; he cannot advance money to remove incumbrances, unless his intestate was bound to pay the money.

APPEAL from the Probate Court of the City and County of San Francisco.

In the matter of the Estate of E. Knight.

The facts, as disclosed by the opinion of the Court, are as follows:

The appeal is taken by the administrator from a decree of the Probate Court, disallowing a claim of $2,000 and more.    This claim originated under these circumstances:    The intestate bought one-fifth of a tract of land called the Suscol Ranch.    The ranch was incumbered in the hands of the vendees (from one of whom Knight purchased) for some $25,000 of purchase money due by mortgage.    Patterson, the administrator, to prevent the foreclosure of the mortgage, made an arrangement with Vallejo, the mortgagee, by which the general claim of Vallejo was removed from Knight's portion of the ranch, and that portion held for only its share ; that is, for one-fifth of the sum ; and by which arrangement the sale of the mortgaged premises was postponed.    The administrator made a payment of the sum in controversy to Vallejo, in order to, and as a consideration for, this arrangement. Knight was not originally bound to pay this money ; but the debt existed as an incumbrance upon the estate purchased by him from the vendee of Vallejo.    This arrangement was made, and this money paid by the administrator without any order or sanction of the Court of Probate or any other Court, but at his own instance, and from considerations of advantage to the estate.    The land was afterwards sold by order of the Probate Court, and for such a sum as left an entire loss to the estate of the sum paid by the administrator to Vallejo.

The Probate Court refused to allow the amount paid by the administrator to remove the incumbrance, and he appealed to this Court.

*Sidney V. Smith* for Appellant.

I. Under our laws, an administrator is obliged to take into his possession both personal and real estate.    Sec. 194 of Act of 1851 ; Harwood *v.* Marye, Oct. T. 1857.    And is bound to keep it until the estate be settled, or till it shall be delivered over by order of Court to the heirs, etc.    Sec. 114 of same Act.

It is his duty to pay all the debts of the deceased out of the personal property, and can only sell real estate in case of deficiency.    Sec. 115.

The reason and object of this last section is clear.    It is nothing more than declaratory of the common law under which the personal property went to the administrator, the real to the heir ; and the inten-

13

tion of our law, while vesting both in the administrator, is still to preserve the realty to the heir.    So decided in Belloc *v.* Rogers, Jan. T. 1858.

The administrator is bound to keep the real estate in good order and repair.    Sec. 114.    And he is to be allowed all necessary expenses in the care of the estate, as also in its management.    Sec. 219.

The word " care " is here placed in juxtaposition to the word " management "; so that it cannot be held to mean what the latter word does.    Its meaning must be deeper; and it must be taken to mean " preservation," which is one of its significations.

" Care " is defined by Webster to mean " a looking to, heed or attention, with a view to safety or protection, as the care of property."

Taxes are not the personal debt of the decedent, nor are they of his creation; and still they are a lien on land, and if not paid, the land is sold, and thereby lost to the heir.

The mortgage due to Vallejo was not a debt created by the decedent, nor was it strictly one due by the estate; and yet it was a lien on land owned by the estate; and as with taxes, so with this mortgage: if it had not been paid, the land could have been sold under foreclosure by Vallejo.

The administrator, therefore, exercising " care " over the estate—over the land which was part of the assets of the estate—settled the mortgage to Vallejo in a manner which at the time was certainly highly beneficial to the estate; that is—by the payment of $2,500 in case he retained to the estate that which was on the day of such payment worth to the estate $20,000.    This payment was therefore a necessary expense, without which the land could not have been then preserved to the widow and heirs.

If it had been a debt created or assumed by the decedent in his lifetime, it would have been under the entire control not only of the administrator but of the Court; it would have fallen within the rule laid down in Ellison *v.* Halleck, Oct. T. 1856, and subsequent cases. The reason for this is apparent.    It is only the creditors of the deceased who are bound to present their claims to the administrator, or else be barred; and it is only they whom the administrator is bound to give notice to, to present their claims.    Secs. 128, 129, 130, &c.

In the matter of the Estate of E. Knight.

A sale of real estate can only be made when the personal property is insufficient to pay the allowance to the family, the debts outstanding against the deceased, and the expenses of administration.

Now, in no aspect was Vallejo a creditor of the deceased, nor had he a debt outstanding against the deceased. All he had was a mere lien on real estate owned by deceased.

If it were a valid claim against the estate, then the result would have been, that it would have been a debt due by the estate; and if the proceeds of the sale of the mortgaged property were insufficient to pay the whole of the debt, the residue would have had to be paid in due course of administration. See sec. 186.

II. It is a well founded rule of a Court of Equity, and more especially of a Court of Probate, that if an executor or administrator, honestly and in good faith, does without the order of the Court that which the Court on application to it would have ordered to be done, he shall be protected. 2 Ashmead, (Penn.) 211; Hopkins' Ch. R. 28; 2 Hill Ch. R. (So. Ca.) 215; 1 Bailey Ch. R. (So. Ca.) 23.

Now, if the administrator in this case, threatened as he was by Vallejo with the foreclosure of the mortgage of $25,000, had in May, 1854, made application to the Court for directions, what would have been the result? We will suppose, for the present, that the Court possessed full power in this matter: The administrator would have stated in his petition the fact that the mortgage was neither given by the decedent nor assumed by him, but was one given by the grantors of the decedent; that the property owned by the estate was worth $20,000 (making, therefore, the value of the whole ranch to be $100,000, since the estate only owned the one-fifth); that the administrator had sufficient funds in hand; that the property had depreciated in value somewhat, but that such depreciation was according to the opinion of every one only temporary; that he could arrange the matter with the mortgagee by paying $2,500 cash, and obtain time for paying the balance, $2,500 more, and thus release the estate, and that the heirs to the estate were the widow and two children; and he would have asked instructions from the Court as to the course he should pursue.

Would the Court, on such a state of facts, have ordered the administrator to let the foreclosure go on? and that he should only take the

proportion of the residue remaining after the mortgage was paid, with all the Court costs and expenses of sale ?

In this view of the case, the Court would certainly have ordered the administrator to do what he did do.    He had, in May, 1854, funds in hand.

In the administration of an estate—in all those various matters which must depend on the judgment of the executor or administrator, and which are not regulated and prescribed by legislative enactments—the rule of guidance is, that no more ought to be expected than would be performed by any prudent man in the care and management of his own property.    Dillebaugh's Est., 4 Watts, 177 ; Jones' Appeal, 8 Watts & Sergt. 148 ; Meeher *v.* Vanderveer, 3 Green, 392.

In Welsh *v.* Perkins, 8 Hammond, 52, taxes were due on an estate in the hands of an administrator.    He had no money of the estate to pay them with, and in order to prevent a sale, he borrowed of a friend the amount required, agreeing that he would at a future day apply to the Court for an order of sale, and would sell certain specified property to raise the money so borrowed.    He acted in perfect good faith.    He obtained the order, and sold a certain piece of land.    It so happened, that after sale the land so sold rose rapidly in value, whereas the other lands not sold remained stationary.    It was sought by the heirs to make him responsible for the loss.    The Court held the estate liable, and allowed the amount to administrator.

In Williams on Executors, 1280, it is said : " If an executor surrenders, or otherwise fails to preserve the residue of a term of years, where the land is of more value than the rent, it is a *devastavit*, for which he is responsible.

So, also, on page 1281, it is said, that though, generally speaking, an executor compounding or releasing a debt, must answer for the same ; yet if it appears to have been for the benefit of the estate, it is an excuse.

Again, on page 1287 : " Where an executor puts out the money of his testator, though without the indemnity of a decree, upon real security, which there was no reason then to suspect, but afterwards, such security prove bad, the executor is not responsible for the loss."    See Estate of Bosio, 2 Ashmead, (Pa.) 437.

In the matter of the Estate of E. Knight.

*F. A. Fabens* for Respondent.

1st. Had the administrator any right or authority to make these payments to Vallejo ?

The administrator has only such powers as are given him by statute, by the Act of May 1st, 1851, regulating the settlement of the estates of deceased persons, and those powers are a limitation of the powers given by the common law.

Thus he can compound with a debtor only with the approbation of the Probate Judge.    Sec. 201 of Act of 1851.

He cannot enter into an agreement in writing to refer a doubtful claim, except to some disinterested person to be appointed by the Probate Judge.    Sec. 142 of Act of 1851.

Neither can he sell personal property except by order of the Probate Court.    Sec. 148 of Act of 1851.

The duty of an administrator, then, is plainly defined.    He has no discretion to act generally for the good of the estate—to do that which he believes in good faith will be advantageous to it.    But he must act according to the law, and the authority given him by the law.    If he assumes to exceed his authority in a case where he thinks it will be beneficial to the estate, he does it at his own risk.    The law does not require him to do it, and, if loss occurs, does not protect him.

The administrator shall take into his possession both the real and personal estate of the deceased.    Secs. 114 and 194 of Act of 1851.

" This, however, is only that he may receive the rents and profits until the administration is concluded ; the law does not make the real estate descend to him as in the case of personalty.    By the common law, the real estate is the heir's, the personal estate the administrator's ; and this rule is not altered with us, except so far as regards the temporary custody of the realty.    Beckett *v.* Selover, 7 Cal. 215.

The administrator shall keep in good tenantable repair all houses, buildings and fences thereon, which are under his control.    Sec. 114 of Act of 1851.

What payments is an administrator authorized to make ?    See secs. 242, 239.

Sec. 243 provides, that the Court shall make an order for the payment of the debts, as the circumstances of the estate shall require.

And by sec. 219 the administrator shall be allowed all necessary expenses in the care, management and settlement of the estate, and for his services such fees as the law provides.

So far from this payment being a necessary expense in the care, management and settlement of the estate, it seems rather to have been a speculative expense. If the ranch, instead of further decreasing, had improved in value, it would have been beneficial; if it continued depreciating, it would be disastrous. The administrator, no doubt, thought that the property would improve, and he was willing to run the risk. It did in fact depreciate, and he must bear the loss. It was not, then, a necessary expense, etc.; for if it had not been incurred the estate would have been better off by some thousands of dollars.

But it is argued, that the word "care" used in sec. 219, is broad enough to cover this payment of a mortgage upon real estate. The necessary expenses in the care of the estate would doubtless include the expenses of keeping houses, buildings, etc. in tenantable repair, which the administrator is specially enjoined to do; but certainly it would not embrace the payment of a mortgage upon real estate which the administrator is nowhere authorized to make.

It is said, however, that these payments were made in good faith, and were at the time made with the object of benefiting the estate. But it is not enough to act in good faith merely. In Rossiter v. Cossit, 15 New Hamp. 41, the Court says: "We cannot adopt the principle suggested in the argument for the appellee, that the administrator is to be allowed the amount he has paid in the redemption of the mortgage to the Wardens of Union Church, if he acted in good faith merely." And again: "But notwithstanding that he acted in good faith, if what he did would probably operate to the prejudice of the creditors, and will in fact so operate if he is allowed the amount paid, we must not disregard their interests because of his good intentions."

In Alsop v. Mather, 8 Conn. 586, the general proposition is stated thus: "An administrator is an agent who is created, and whose powers and duty are prescribed by law. The extent of his liability is defined by the condition of his bond."

In the matter of the Estate of E. Knight.

There are several cases in Louisiana not decided upon any enactment of the Code, which illustrate the general principles declaratory of the limited powers of an administrator.   Russell *v.* Cash, 2 La. 187, republished in 1 Louisiana Reports, 317 ; Gillett *v.* Ruchall, 9 Robinson, 279.

An administrator cannot, in any transaction in which he pretends to act as such, create any liability on the estate, or change the nature of its obligations, or increase its responsibility with regard to its outstanding debts, and if he does so, he will be personally bound.   Bank of Louisiana *v.* Dejean, 12 Robinson, 19 ; and cases commented upon by the Court in that case ; see also to this same point, Whightman *v.* Townroe, 1 Maule & Selwyn, 415 ; Alsop *v.* Mather, 8 Conn. 587 ; Wyse *v.* Smith *et al.*, 4 Gill & John.

So too, when the widow of the deceased testator entered into an agreement with the executors, by which she relinquished her dower, and they agreed, as executors, to pay her in consideration thereof a certain sum therein specified.   The Court held that the estate was not liable on the contract of the executors, but that the contract only bound them personally.   Callis *v.* Tolson's Exctrs. 6 Gill & Johnson, 91.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., concurring.

This is unquestionably a hard case on the administrator, for he seems to have acted in good faith.   But we cannot relax or set aside the rules of law to suit the exigencies of particular cases, or relieve individual instances of hardship.

The statutes of this State do not allow an administrator to pay even the debts due by an intestate except in a particular way.   Certainly they do not allow him to pay money not due by an intestate, upon an idea that the payment might be beneficial to the estate.   He is to take care of, manage and preserve the estate committed to him; but this does not mean that he is, at discretion, to pay off all incumbrances resting on the property, upon the notion that the property may increase in value, and thereby a speculation may be made for the estate.   If this were so, an administrator might consume all the assets

of the estate in clearing the title to a portion of the property, and then the property might turn out to be valueless or worth but little. If a case should arise in which a great sacrifice would ensue unless money were paid to discharge an incumbrance, it is not impossible that a Court of Chancery might order the expenditure of the money needed to remove such incumbrance. The rule of equity is, that a trustee has a right, in questions of responsibility and difficulty, to seek the direction of a Court of Chancery, touching his conduct in the trust, and that the decree of the Court is a protection to him. But if he undertakes to go beyond the strict line of his duty as the law defines it, he acts upon his own responsibility, and while he can receive no profit from a successful issue of his investment, he must bear the loss of a failure. It would be a most dangerous precedent to hold that an administrator may speculate with the funds of the estate, or pay charges not allowed by law, though solely with a view of benefiting the estate, and then throw the loss upon the estate, and assign his good intentions as a defense to the injurious consequences of his acts.

The administrator, in the absence of special authority, must administer the estate as he finds it, paying taxes and other necessary expenses, and doing such other acts as are necessary to preserve it as left ; he cannot advance money to remove incumbrances, unless his intestate was bound to pay the money. If he takes the responsibility of improving the estate, or bettering the title in this way, it must be at his own risk. The loss cannot be visited upon the heirs, who gave him no authority to cause it. Nor can he ask legal protection, when he has himself, though with the best motives, gone beyond the provisions of the law.

The decree of the Probate Court is affirmed.