[Civ. No. 965. Fourth Appellate District.—November 3, 1932.]

In the Matter of the Estate of HATTIE L. WARD, Deceased. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, Executor, etc., Respondent, v. ANGELUS CLOAK COMPANY et al., Appellants.

Samuel A. Miller and Samuel Reichler for Appellants.

J. L. Hofflund for Respondent.

AMES, J., *pro tem.*—Hattie L. Ward, in her last will and testament, after making various bequests, devised all the rest, residue and remainder of her estate to the Bank of Italy National Trust & Savings Association, now known as Bank of America National Trust & Savings Association, in trust for the uses and purposes set forth in said will, and nominated it as executor. Included as a part of the residue was a retail business, dealing in ladies' wearing apparel, known as "Pollyana The Glad Shop", located in the city of San Diego. In the trust clause of her will, which is designated as article fifth, the testatrix provided as follows:

"Said Trustee shall, as long as it may in its own discretion deem expedient, practical, and desirable, maintain and operate the business known as Pollyana The Glad Shop, located at 1031 Fifth Ave., San Diego, California. If, at the time of my death, Henry P. Stelling, my son-in-law, is managing and in active control of said Pollyana The Glad Shop, and apparently competent and capable of continuing to control and manage the affairs thereof, then said Trustee shall continue said Henry P. Stelling in the management and control of said business as long as said Trustee shall continue the operation thereof, . . . "

And again in said article fifth she further provides: "Said trustee shall be the sole judge of whether or not said Henry P. Stelling is competent to continue and should continue in the control and management of said Pollyana The Glad Shop," and proceeds to give minute directions as to the management of her business and the conditions upon which Stelling shall continue in the management and control of such business, and fixes the minimum compensation to be allowed him. Hattie L. Ward died on the thirty-first day of July, 1930, and on the fifteenth day of August, 1930, the

will of decedent was admitted to probate and letters testamentary were issued to respondent, which continued to operate the business of the decedent. Within the time allowed by law the appellant creditors presented to the executor claims against the estate, which were duly allowed, approved and filed. On the twentieth day of April, 1931, the executor filed its first annual account and included therein a request that it be authorized to continue the operation of the business known as "Pollyana The Glad Shop" during the further administration of the estate. On the first day of May, 1931; after a hearing thereon, the court made an order settling the account and found that notice of said hearing had been duly given in conformance with the provisions of the statute, and that no requests for special notice of any steps or proceedings had been made pursuant to the provisions of section 1380 of the Code of Civil Procedure, which was then in effect. The order settling the account contained the following provision:

"2. Said executor be and it is hereby authorized and directed to continue the operation of that certain women's retail apparel business known as 'Pollyana The Glad Shop', and to buy goods for the conduct of same, and sell same at retail. Said executor is authorized to purchase said goods on account. All acts heretofore done by said executor in the conduct of said business, in purchasing goods for the account of same, and in the payment of bills for goods purchased, are hereby approved."

No other or further order authorizing a continuance of the business was ever made or applied for. On the fourth day of January, 1932, the executor filed its second current report and account, from which it appears that that certain asset described in the inventory as "women's apparel business" and known as "Pollyana The Glad Shop", had been fully liquidated and that all of the assets of said business had been disposed of. Appellants filed exceptions to said current report and account, and after a hearing thereon the court approved such report and account and from the order approving the same certain creditors appeal.

It is first contended by appellants that the executor had no authority to continue the operation of the business known as "Pollyana The Glad Shop", and they seek to charge respondent with expenses so incurred. The first ac-

count and report is incorporated in the transcript, and contains, in itemized form, the receipts and disbursements incident to the operation of the retail business up to and including the fourteenth day of April, 1931, and the order settling and approving such account, having become final, is not now subject to attack.

Is the executor chargeable with the expense of operating the retail business subsequent to that time? In 1929, section 1581 of the Code of Civil Procedure was amended by adding thereto the following provision:

"After notice to all persons interested in an estate, given in such manner as may be directed by the court or a judge thereof, the court may authorize the executor or administrator to continue the operation of the decedent's business to such an extent and subject to such restrictions as may seem to the court to be for the best interest of the estate and those interested therein."

This identical provision was re-enacted as section 572 of the Probate Code and was in effect at all times during this proceeding. We accede to the argument of the appellant that the purported order of May 1, 1931, was void. Probate proceedings are entirely the creature of statute, and where a remedy is invoked pursuant to its provisions the steps therein prescribed must be pursued. The manner in which notice of such application should be given to "persons interested" in the estate was not ordered by the court or a judge thereof. The creditors whose claims had been allowed were entitled to notice as contemplated by section 1581 of the Code of Civil Procedure (Probate Code, sec. 572), and we have no hesitancy in holding that the court had no jurisdiction to make the order of May 1, 1931, authorizing a continuation of the business, and if the executor possessed such power, we must look elsewhere for its origin.

It has long been held, in California, that an executor or administrator, as such, possesses no power to continue the business operations of a decedent. In the case of *In re Rose*, 80 Cal. 166 [22 Pac. 86, 87], the decedent at the time of his death was engaged in the cattle, sheep and dairy business. His administrator continued said business and suffered a substantial loss. In holding that he had no authority to do so, the Supreme Court says:

"The business was a hazardous one for an administrator to undertake, and one which the law did not require at his hands. (*Brenham* v. *Story*, 39 Cal. 188.) If it resulted in profit, that profit belonged to the estate, and not to himself. It being a business which he was neither required nor authorized by law to conduct on behalf of the estate, if he did do it, with the property and funds of the estate, and there was loss, the loss was his. Whenever an administrator undertakes to go beyond the strict line of his duty, he acts upon his own responsibility. He can derive no profit from the success of his venture, but must bear the loss of a failure. (*Estate of Knight,* 12 Cal. 200 [73 Am. Dec. 531].) If he uses the real estate of the estate, he must account for the rental value thereof, and if he makes a profit, account to the estate for that also. (*Walls* v. *Walker*, 39 Cal. 424 [99 Am. Dec. 290]; to the same effect is *Tompkins* v. *Weeks,* 26 Cal. 51.) If, as in this case, the administrator elects to assume the peril, and is permitted by the court and parties interested, without objection, to so conduct and manage the business, the liabilities growing out of the management are not claims which could be enforced against the estate by the holders thereof. They are his liabilities. He has a right to pay them out of the increase of the business, but if by so doing a loss is sustained to the estate, he must make the loss good. Protected from loss and from liability at all times, the estate is interested in the business only to the extent of its profits; and in them not because it is the business of the estate, but because the administrator is using the property of the estate in a way he is not authorized to do, and consequently is required to account for all the profit made by its use."

In *Estate of De Rome,* 175 Cal. 399 [165 Pac. 919, 920], the court says: "As was said in the Rose case, the administrator who assumes the perils of the management of a business belonging to an estate does not, by so doing, subject the estate to the liabilities growing out of his conduct of the enterprise. They are his liabilities and he may pay them out of the increase of the business, but if by so doing a loss to the estate is sustained, he must make that loss good." The same rule has been announced in numerous cases, among which may be cited *Estate of Knight,* 12 Cal. 200 [73 Am. Dec. 531]; *Tompkins* v. *Weeks et al.,* 26 Cal.

50; *Brenham* v. *Story,* 39 Cal. 179; *In re Moore,* 72 Cal. 335 [13 Pac. 830].

We are next confronted with the question as to whether or not, independently of section 572 of the Probate Code and its corresponding provision in the Code of Civil Procedure, the testatrix had the right to confer such power upon an executor by her will. We have been cited to no decision in California, and we have been unable to find any, in which that question has been directly determined by any of our courts of appellate jurisdiction. However, it has been said that the rule above announced, viz., that an executor or administrator possesses no power as such to continue the operation of the business of the decedent, is not absolute. In *Estate of Burke,* 198 Cal. 163 [244 Pac. 340, 341, 44 A. L. R. 1341], it is said: "In all such cases it is held that the administrator or executor, except in rare and special instances, is under no obligation or duty to continue the business of the deceased." In *Reidy* v. *Bidwell,* 70 Cal. App. 552 [233 Pac. 995], it is said: "The law appears to be well settled that it is no part of the duty of an executor to carry on for the benefit of the estate a business formerly conducted by the testator in his lifetime. Exceptions to such rule may exist, where the will of the testator expressly creates the power so to do." Although this statement is *dicta,* it recognizes the rule which obtains in other jurisdictions. In *Furst* v. *Armstrong,* 202 Pa. 348 [51 Atl. 996, 90 Am. St. Rep. 653], it is said:

"It is unquestionably true that an executor cannot subject any assets of the estate to liability for trade debts unless the will of the testator confers the authority. His duties as executor do not go to that extent. But it is settled that a testator may by his will empower his executor to carry on the business in which he is engaged at the time of his death, and when he does so he subjects the assets of his estate to debts contracted for that purpose."

From numerous authorities recognizing the same rule we will cite the following: *Roberts* v. *Hale,* 124 Iowa, 296 [99 N. W. 1075, 1 Ann. Cas. 940]; *In re Ennis' Estate,* 96 Wash. 352 [165 Pac. 119]; *Eufaula Nat. Bank* v. *Manasses,* 124 Ala. 379 [27 South. 258]; 24 C. J. 58.

If, then, prior to the amendment to section 1581 of the Code of Civil Procedure, a testator had the power to confer

upon the executor the right to continue his business after his death, is the procedure prescribed by that amendment an exclusive remedy, or may an executor exercise the right which previously existed, without conformity to its provisions? ▉ We think that the rule is, that where a statute creates a right that did not exist prior to its enactment, and prescribes the proceedings to be followed in the exercise of such right, that such procedure is exclusive, but where, on the other hand, the statute purports to confer a right which was in existence prior to its enactment, and prescribes the procedure to be pursued, that such procedure is merely cumulative and that the party upon whom such pre-existing right is apparently conferred may, at his option, pursue the steps prescribed by the statute, or adopt the pre-existing remedy. From the earliest times this doctrine has been recognized and adopted by the courts of this state. In *People* v. *Craycroft*, 2 Cal. 243 [56 Am. Dec. 331], the court says: ''Where a right is given, and a remedy provided by statute, the remedy so provided must be pursued. It is true, if the right existed at common law the plaintiff might pursue either remedy, the statutory one being regarded as merely cumulative.'' The rule is again stated in *Ward* v. *Severance*, 7 Cal. 126, that when a right is introduced by statute, the party complaining of its violation is confined to the statutory remedy, so far as the courts of common law are concerned. If, however, the right existed at common law, the remedy provided by statute is merely cumulative. In the case of *Gilbert* v. *Peck*, 162 Cal. 54 [121 Pac. 315, Ann. Cas. 1913C, 1349], the defendant leased certain premises to the plaintiff, who, it was alleged, conducted a nuisance thereon. Defendant landlord entered upon the premises and removed plaintiff's personal property therefrom, and for this entry plaintiff sued for damages. At the trial defendant objected to the introduction of any evidence on the ground that the plaintiff's exclusive remedy was an action for forcible entry and detainer under the provisions of section 1159 et seq. of the Code of Civil Procedure. The court says, at page 59: ''The complaint stated a good cause of action for the conversion of personal property. If there were also allegations of fact which would have warranted a summary proceeding under the code sections referred to, this would not bar the plaintiff of her right to maintain

an ordinary action for damages. The code itself does not undertake to make the forcible entry proceeding the exclusive remedy where facts showing a cause of action independent of the code provisions are alleged, and we are cited to no authority supporting appellant's claim in this regard.'' (See, also, *County of Monterey* v. *Abbott*, 77 Cal. 541 [18 Pac. 113, 20 Pac. 73] ; 1 Cal. Jur. 383 ; *State of California* v. *Poulterer*, 16 Cal. 515 ; *Blaine County Canal Co.* v. *Hansen*, 49 Idaho, 649 [292 Pac. 240] ; *Hickman* v. *Kansas City*, 120 Mo. 110 [25 S. W. 225, 41 Am. St. Rep. 684, 23 L. R. A. 658] ; *Billmeyer Lumber Co.* v. *Merchants' Coal Co.*, 66 W. Va. 696 [66 S. E. 1073, 26 L. R. A. (N. S.) 1101].) And the same rule obtains whether the pre-existing right was founded on common law or upon statute. (*Colorado Milling etc. Co.* v. *Mitchell*, 26 Colo. 284 [58 Pac. 28] ; *Burnham* v. *Onderdonk*, 41 N. Y. 425 ; *Hickman* v. *Kansas City, supra*.)

█ Appellants next contend that the only authority conferred by the will on the Bank of Italy National Trust & Savings Association to continue the operation of the business of deceased is vested in it, if at all, not in its capacity as executor of the will, but in its capacity as testamentary trustee. That authority, if it is such, appears only in the residuary bequest in article fifth above quoted.

In *Estate of Phelps*, 179 Cal. 703 [178 Pac. 846, 848], the question involved was whether or not a person who was acting both as executor and trustee under the will, was acting in his capacity as trustee or in his capacity as executor. The court quotes with approval from 1 Woerner on Administration, 504, as follows:

''The appointment to a trust under the will, not essential to the office of an executor, does not constitute the trustee an executor according to the tenor, for the offices of an executor and of a trustee are distinct, and may be vested in different persons, and when they are vested in the same person, the functions of each are nevertheless to be performed by him in the respective capacity, the probate court having jurisdiction over him in the one, but not in the other capacity; and an administrator *de bonis non cum testamento annexo*, appointed after the death of an executor who was also appointed trustee in the will, does not *virtute officii* succeed to the trust. But where the testator uses the word

'trustee', and imposes duties involving the functions of an executor, this will be held a good appointment as executor.''

In *Craemer* v. *Holbrook*, 99 Ala. 52 [11 South. 830], which is cited in *Estate of Phelps, supra,* the Supreme Court of Alabama said:

''The fact, however, that a testator by his will devolves such a special personal trust or power upon the person who is named as executor does not necessarily oust the jurisdiction of the probate court over the administration of the estate. If the trust or power is not such that its execution is involved in the discharge of the duties of an ordinary executor, so that the functions of the one person in his two characters as executor and as trustee are not so blended and mingled that they cannot be distinguished or separated the one from the other, then the probate court has jurisdiction over the executor in reference to his purely executorial functions, though it has no power over him in his other independent capacity, as a trustee under the will; but if such special trust or power is attached to the executorial office or character, and is not personal to him who is named as executor and trustee, then the jurisdiction of the probate court is ousted, as to the administration of a trust of which only a court of equity can take cognizance.''

The same distinction is recognized in *Goad* v. *Montgomery*, 119 Cal. 552 [51 Pac. 681, 63 Am. St. Rep. 145], and *Bemmerly* v. *Woodard*, 136 Cal. 326 [68 Pac. 1017].

The record discloses the fact that the testatrix was the owner of a retail mercantile business in a populous city, involving an investment which constituted a considerable portion of her estate. The items in the second current account would be an indication of the volume of business conducted by the executor, and it would appear therefrom and from all the facts in the case, that her establishment was a going concern, engaged in conducting an active mercantile business. She specifically directs that Henry P. Stelling shall continue in the management and control of the business, and again provides that the trustee or executor, if that was her intention, should be the sole judge as to Stelling's competency to continue, and as to whether or not he should continue in the control and management of said business. From a reading of article fifth in its entirety, the idea that the testatrix therein conveyed was

that the operation of her business should be continued without interruption, and we cannot conceive from the reading of that article that she intended that the operation of this going concern should be suspended during the period of time required for the administration of her estate. If, then, the executor was authorized to continue the operation of the business, it would not be liable for losses incurred, in the absence of fraud or mismanagement, and neither of these is alleged nor proved.

■ Appellants then object to the payment of certain installments of interest on mortgages on certain real property belonging to the estate out of the general assets of the estate, but contend that such payments can be made only from the proceeds of the encumbered property. This contention, however, is answered in the case of *Estate of McDougald,* 146 Cal. 196 [79 Pac. 875]. In that case the Supreme Court, in construing section 1645 of the Code of Civil Procedure, says at pages 201, 202: "The word 'proceeds' as here used does not include the rents of the property accruing before the sale, at least where the rents, issues or profits of the property are not included in the mortgage. The court therefore properly held that the rents were general assets of the estate on which the mortgage was not a lien and in which it was entitled to no preference. The preference given to mortgage debts by section 1643 is by section 1644 clearly limited to the proceeds arising from the property mortgaged, either upon a foreclosure sale or a sale by the administrator under section 1569."

■ Appellants next object to certain items of disbursement, as shown in said account, to Nina May Stelling, on the ground that the same were not debts of the decedent nor charges against the estate, and upon the further ground that said estate was insolvent. By the fourth article of the will of decedent she bequeathed to her daughter Nina May Stelling the sum of $150 per month for the support and maintenance of herself and children pending the settlement and distribution of the estate and directed her executor to pay the same "as soon as may be" after her death. It appears from the transcript that on the thirtieth day of January, 1931, an order was made by the court directing the executor to distribute to said Nina May Stelling the sum of $150 per month from the date of the death of decedent

and until the final settlement and distribution of the estate, together with a certain automobile which was bequeathed to Mrs. Stelling in the will of decedent, and exacted from her a bond in the sum of $1,000, which was filed. The order recites the filing of the petition by Mrs. Stelling and finds that notice of said hearing had been given in the manner and form required by law. Said order has become final and appellants cannot now attack the same by filing exceptions to the current account.

Appellants further excepted to the account on the ground that "no vouchers are on file for any of the items enumerated in said items of disbursement". But one voucher has been incorporated into the record as an exhibit, and it appears to be a receipt in due form. Furthermore, the trust officer of the executor testified that receipts were on file and the court found that the items were supported by proper vouchers. In the absence of further evidence the finding of the trial court is conclusive.

Another exception filed by the creditors to the account current was upon the alleged grounds that the executor failed and neglected to charge itself with the sum of $10,000 received by it upon a policy of insurance on the life of deceased and that the executor failed and neglected to report that item to the court and to include the same among the assets of the estate. No such item appears in the inventory of the assets of the estate nor is it appraised therein. Its existence is first disclosed in the first current account, in which the executor reports: "With the money at present on hand in said estate, together with the balance in a certain special trust fund, of which your Executor is Trustee, and which your Executor is authorized to use for such purpose, your Executor has sufficient money on hand to pay twenty-five per cent (25%) on the claims presented, allowed, and unpaid in the foregoing account." And in the order of May 1, 1931, settling said account, the following is incorporated: "Said executor is authorized and directed to pay twenty-five per cent of the claims presented, allowed, and unpaid, as set forth in its said account, from the funds of said estate or from the special trust fund referred to therein, or from both of said funds, as said executor may see fit." Again, in the current account under date of May 13, 1931, the following entry appears: "Bank

of America, Transfer of Funds from Private Trust 854, $6,183.48.'' When interrogated at the hearing upon the current account the trust officer of the executor testified that the decedent carried a life insurance policy in the sum of $10,000, in which the Bank of America National Trust & Savings Association, Trustee, was named as beneficiary; that the sum of $10,000 was collected upon said policy; that after the hearing of the first account current, the court having ordered twenty-five per cent of the claims of the general creditors to be paid, the executor transferred the said sum of $6,183.48 to the assets of the estate to be used for the purpose of paying the claims of such creditors, and the same was actually used for that purpose. He further testified that the balance of the $10,000 was not accounted for to the court because it was not a part of the assets of the estate, and that he did not know what disposition had been made of said balance; that it was a private arrangement between deceased and the bank with regard to an insurance trust.

A *subpoena duces tecum* was issued and served upon the bank requiring it to produce its records with respect to the life insurance policy and the trust under which it claimed to hold the same. The bank declined to comply with the mandate of the court and declined to disclose the facts with respect to any trust agreement or what disposition had been made of the balance of $3,816.52 remaining from the proceeds of the policy, although no contempt proceedings were initiated and none requested.

It is true that ordinarily the proceeds of a policy of insurance, under the terms of which the beneficiary named is some person other than the executor or administrator, form no part of the estate of the insured. The beneficiaries named in the policy take by virtue of the contract rather than by the laws of succession or under the terms of the will. (*Heydenfeldt* v. *Jacobs*, 107 Cal. 373 [40 Pac. 492]; *Burke* v. *Modern Woodmen of America*, 2 Cal. App. 611 [84 Pac. 275]; *Nickals* v. *Stanley*, 146 Cal. 724 [81 Pac. 117].) But under the terms of the ''insurance trust'' the estate may have had a beneficial interest in the proceeds of the policy.

That such a trust existed, from which the estate derived a profit of $6,183.48, was disclosed by the reports and ac-

count of the executor and by the testimony of an evasive witness, who declined to inform the court as to the nature of the trust and what interest, if any, the estate had in it.

It was the duty of the court, rather than that of the executor to determine what interest, if any, the estate had in the insurance policy and all of the proceeds thereof and in failing to pursue such inquiry we think the court erred.

The order appealed from is reversed for further proceedings in connection with this life insurance matter only and the trial court is directed to take evidence with respect to the policy of insurance on the life of decedent and the agreement under which the Bank of America National Trust & Savings Association held and collected the same and to make such further order in the premises as, under the evidence thus elicited, may be appropriate, in accordance with the views herein expressed. Each party shall pay its own costs of appeal.

Barnard, P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 29, 1932.