[Civ. No. 12144.   First Dist., Div. One.   Jan. 29, 1943.]

RICHARD LEE TURNER, a Minor, etc., Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY (a Corporation) et al., Defendants; VELMA GONZALES et al., as Administratrices, etc., Interveners and Appellants.

Tsar N. Calfee and Norman A. Gregg for Appellants.

Geo. R. Vaughns and Frank M. Larche for Respondent.

KNIGHT, J.—Plaintiff, by his guardian ad litem, brought this action against the defendant insurance company to collect $1,250 claimed to be due him as beneficiary under a policy of life insurance. The administratrices of the insured's estate presented an adverse claim to the money and were granted leave to file a complaint in intervention; whereupon and on stipulation the insurance company paid the money into court and was discharged from further liability. Thereafter the cause was tried on the merits and judgment was entered in favor of plaintiff. From said judgment the interveners have taken this appeal, which is presented on a clerk's transcript consisting of the judgment roll and the written opinion rendered by the trial court.

The policy sued upon is dated November 6, 1939, and is of the type known as a Master Group Policy. It was issued by said company to the Certain-Teed Products Company for the benefit of its employees, one of whom was Lewis William

Turner; and the beneficiary clause read: ''If there be no designated beneficiary at the time when any benefits shall be payable to the beneficiary, then such benefits shall be payable as follows: To the wife or husband, if living, of the employee; if not living, to the children of the employee who survive the employee, equally; if none survives, to either the father or the mother of the employee, or to both equally; if none of the above survives the employee, to the estate of the employee.''

Turner, the insured, died June 25, 1941. He had been married, but there were no children the issue of the marriage, and his wife predeceased him. The plaintiff is Turner's child, but he is a posthumous, illegitimate child, born shortly after Turner's death; and the interveners contended that the designation ''children'' in the policy as one of the classes of beneficiaries excluded illegitimate children. The trial court held adversely to such contention, and the interveners urge that this was error.

The contention so made by the interveners is based on the common law, the substance of the argument made by them in this behalf being that under the common law illegitimates are held to be *nullius filii;* that as the sons of nobody they are deemed to have no inheritable blood; that they themselves may not inherit, nor can they transmit property by inheritance, except to their own lineal descendants; that notwithstanding some of the harsh and oppressive restrictions imposed upon illegitimates by the common law have been done away with in this state by statutory enactments, particularly by providing that an illegitimate may inherit from his mother and his mother from him, the rule of the common law still prevails that denies to an illegitimate the right to inherit from his father, and to his father and his father's kin the right to inherit from him, save under conditions specified in sections 255 and 256 of the Probate Code, which do not here exist; that therefore in the absence of statutory enactment granting to illegitimates full equal status with legitimates, the trial court herein was bound to hold against plaintiff in conformity with the common law definition of ''children,'' which includes only children born in lawful wedlock. The two principal cases relied upon by the interveners as sustaining their view are *Wolf* v. *Gall,* 32 Cal.App. 286 [163 P. 346, 350], and *Estate of Paterson,* 34 Cal.App.2d 305 [93 P.2d 825].

However, in thus contending that despite the admitted

fact that plaintiff is the child of the insured he is excluded from the benefits of the insurance policy, the interveners seek to invoke the law of inheritance; and in each of the two cases relied upon by them the court was dealing only with a right of inheritance. If, therefore, plaintiff's right of action herein depended upon his right to inherit from his father, the argument advanced by the interveners would be pertinent. But it has been definitely held in this state, as in other jurisdictions, that in cases such as this, involving the right to the proceeds of a life insurance policy, the law of contracts and not the law of inheritance is controlling; that beneficiaries under an insurance policy take by virtue of the contract of insurance rather than by the laws of succession; and that the law of descents and distributions has no applicability to such cases. (*Estate of Ward*, 127 Cal. App. 347, 359 [15 P.2d 901]; *Heydenfeldt* v. *Jacobs*, 107 Cal. 373, 377 [40 P. 492]; *Mund* v. *Rehaume*, 51 Colo. 129 [117 P. 159, 161, Ann.Cas. 1913A, 1243].) Therefore the determinative question here presented is not one of inheritance, but is whether under the rules established for the construction of contracts it was unreasonable for the trial court to hold that the word "children" as employed in the beneficiary clause of the policy covered all children of the insured; and it is our conclusion that it was not unreasonable so to hold.

As declared by section 1644 of the Civil Code: "The words of a contract are to be understood in their *ordinary and popular sense, rather than according to their strict legal meaning;* unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed" (italics ours); and clearly the ordinary and popular sense in which the word child (the singular of children) is understood is as defined in the dictionaries, to wit: a son or daughter; a male or female in the first degree; the immediate progeny of human parents (Webster's Dictionary); the offspring, male or female of human parents (Standard and Oxford Dictionaries). No distinction is drawn between legitimate and illegitimate offspring. It is quite true that in the law dictionaries the technical legal definition of "child" is restricted to conform to the common law definition, that is, to legitimate children; but as held in *Mund* v. *Rehaume, supra,* in construing beneficiary clauses of insurance contracts the technical definitions found in law

dictionaries of the different human relationships are not controlling. That was a case involving the construction of the terms of a mutual benefit insurance policy where the benefits were made payable, in case the insured left no widow or descendants, to the insured's parents. The insured left no widow or descendants, and his mother predeceased him; and the trial court held that the insured's father was not the "parent" of the insured and therefore was not entitled to the insurance money because the marriage between the father and mother was absolutely null and void. The trial court's decision was reversed, and in so reversing it the court went on to say: "The lower court went upon the theory that, if the son could not transmit to the father under the technical laws of inheritance, then the father was not his parent and could not be a beneficiary. This is not the proper test. The proper construction of the contract, and not the law of inheritance, fixes the rights of the parties. The word 'parents,' if we accept the ordinary and common use of words, should be construed to mean the father and mother of the insured, under the circumstances of this case. The technical definitions of the words father, mother, child, and parent, found in law dictionaries, are not controlling in this contract. . . . Our statutes provide that all words, unless the intention was to use them in their technical sense, shall be understood and construed according to the approved and common usage of the language. . . . Applying the common meaning of the word to the facts in this case, it should be construed to mean the father and mother of the insured."

Furthermore, by statutory enactments in this state, illegitimate children have been placed on a full parity with legitimates insofar as their right to support and maintenance is concerned; and consequently under the Insurance Code an illegitimate child has an insurable interest in the life of its father. In this respect section 196a of the Civil Code provides: "The father as well as the mother, of an illegitimate child must give him support and education suitable to his circumstances," which obligation may be enforced by civil suit brought in behalf of the illegitimate child by its mother or guardian; section 270 of the Penal Code declares that if the father "wilfully omits without lawful excuse to furnish necessary food, clothing, shelter or medical attendance or other remedial care for his child" he may be prosecuted criminally for such omission; and section 10110 of the Insurance Code provides that "Every person

has an insurable interest in the life and health of: . . . (b) Any person on whom he depends wholly or in part for education or support." It is a matter of common knowledge that in most cases the real purpose of life insurance is to provide for the maintenance of the insured's dependents; and as will be seen, if the insured father herein had lived he would have been legally bound by civil and criminal laws to maintain his child, notwithstanding it was his illegitimate child. ▮▮▮ It would seem, therefore, that in the absence of any restrictive language to the contrary in the policy herein, it was not unreasonable for the trial court to construe the word "children" as used in the policy as meaning all children of the insured that he was legally bound to maintain. The well-considered decision rendered in *Middleton* v. *Luckenbach S. S. Co.,* 70 F.2d 326, applied the above line of reasoning in a case involving the construction of a federal statute allowing suit to be brought for the benefit of the "wife, husband, parent, child or dependent relative" of a person whose death was caused by "wrongful act, neglect or default occurring on the high seas," and it was held that the words "parent, child, or dependent relative" included illegitimate children and mothers of illegitimate children. The court in so holding said: "There is no right of inheritance involved here. It is a statute that confers recovery upon dependents, not for the benefit of an estate, but for those who by our standards are legally or morally entitled to support. Humane considerations and the realization that children are such no matter what their origin alone might compel us to the construction that, under present day conditions, our social attitude warrants a construction different from that of the early English view. The purpose and object of the statute is to continue the support of dependents after a casualty. To hold that these children or the parents do not come within the terms of the act would be to defeat the purposes of the act. The benefit conferred beyond being for such beneficiaries is for society's welfare in making provision for the support of those who might otherwise become dependent. The rule that a bastard is *nullius filius* applies only in cases of inheritance."

Even at common law it was held in some instances that the maxim that an illegitimate is *nullius filius* applied only in cases of inheritance (7 C.J., p. 958, note 42a; *Garland* v. *Harrison,* 8 Leigh [Va.] 368; *Hains* v. *Jeffell,* 1 Ld.Raym. 68, 91 Eng. Reprint 942; *Rex* v. *Hodnett,* 1 T.R. 96, 99 Eng.

Reprint 993); and if in cases such as this involving the construction of beneficiary clauses of contracts of insurance the law of inheritance rather than the law of contracts should be held to be controlling, it would mean that where the benefits of a policy are made payable to the insured's "children," an illegitimate child of the insured would be entitled to receive those benefits if its mother was the insured, but not if the father was the insured; or in case the policy insured both the mother and the father and both died, an illegitimate would receive the insurance left by the mother and be denied that left by the father, upon the theory that the illegitimate was the child of the mother but was not the child of the father, notwithstanding both the father and the mother are legally liable for its maintenance and support. Thus, if the laws of inheritance were held to be controlling in the interpretation of the beneficiary clause of a contract of insurance, it would in effect be holding that the word "children" as used in the policy insuring the mother meant one thing, and when used in a policy insuring the father meant something entirely different.     In any event, the well-settled rule in this state is, as already pointed out, that the rights of a beneficiary of an insurance policy are not measured by the law of inheritance.

It may be conceded that cases are to be found construing compensation statutes and those granting the right to recover damages in tort actions, wherein a distinction is made because of illegitimacy; but those cases are invariably based on the technical wording of the statutes there under consideration, and are therefore not here in point. *Bell* v. *Terry & Tench Co.*, 177 App.Div. 123 [163 N.Y.S. 733], and *Scott* v. *Independent Ice Co.*, 135 Md. 343 [109 A. 117], cited by the interveners, were compensation cases wherein the statute itself defined a child as including a posthumous child or a legally adopted child; and the court held in effect that since the Legislature sought to define the word, if it had intended that illegitimate children were to have the benefit of the statute it would have included them in the definition; and the Legislature not having done so, it was beyond the power of the courts to add illegitimate children to the definition. In *Murrell* v. *Industrial Commission*, 291 Ill. 334 [126 N.E. 189], which was another compensation case, the statute read: ". . . widow, child, parent, grandparent or *other lineal heir* . . ." (italics ours); and it was held that the use of the word "or other lineal heir" in connection with the relationships

therein specified restricted the operation of the statute to "lineal heirs," that is, to those there specified who were entitled under the laws of that state to inherit. And the decision in the case of *Lavigne* v. *Ligue des Patriotes*, 178 Mass. 25 [59 N.E. 674, 86 Am.St.Rep. 460, 54 L.R.A. 814], strongly relied on by interveners, is not controlling here, because the policy there involved was issued by a mutual benefit association, and the decision was based on an interpretation of the particular by-laws of that association, and the statutes under which the association was organized. Furthermore, as said in 45 Corpus Juris, page 178, in referring to the Lavigne case, "there is authority to the contrary."

Here the insurance company and the insured employee contracted in unambiguous terms that if the insured was not survived by a wife the proceeds of the policy would be paid "to the children of the employee." Plaintiff is admittedly the employee's child, and since there are no words of limitation or restriction used in the policy in connection with the word "children," we agree with the conclusion reached by the trial court that said word should be taken in its ordinary and popular sense (Civ. Code, § 1644), which means all children of the employee.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 29, 1943.