## Hull Estate

*Harold W. Budding,* for exceptants.

*Barley, Snyder, Cooper & Mueller* and *Brown & Zimmerman,* contra.

18

BOWMAN, P. J., August 15, 1957.—Ralph B. Hull died testate July 7, 1939. By his will he disposed of his residuary estate as follows:

"THIRD: All the rest, residue and remainder of my estate, real and personal, wheresoever situate, I give, devise and bequeath unto The Fulton National Bank of Lancaster, in trust, to hold, invest and re-invest the same and pay the net annual income therefrom unto my son, Ralph B. Hull, Jr., until he arrives at the age of fifty years. I direct that neither the income from said trust fund hereby provided for my said son, Ralph B. Hull, Jr., nor the principal fund, shall be liable for any debt or obligation which my said son now has incurred or may hereafter incur, and shall not be subject to the right on the part of any creditor to seize or reach the same under any writ or by any proceeding at law or in equity. Upon the arrival of my said son at the age of fifty years, I give, devise and bequeath the principal of said trust fund unto my said son, Ralph B. Hull, Jr., absolutely. If my said son should die before he arrives at the age of fifty years, leaving lawful issue to survive him, then I order and direct the net annual income from said trust fund to be paid in equal shares and parts to such lawful issue so surviving until they respectively reach the age of twenty-one years, at which time I give, devise and bequeath to each of said issue, so arriving at said age, his or her equal share of the principal of said trust fund. Should my said son, Ralph B. Hull, Jr., die before arriving at the age of fifty years, without leaving lawful issue to survive him, then I order and direct said trust fund to be held in further trust by the said The Fulton National Bank of Lancaster and to pay the net annual income from said trust fund, in equal shares and parts, to The Lancaster General Hospital, of Lancaster, Pa., and St. Joseph's Hospital, of Lancaster, Pa., their successors or assigns."

Ralph B. Hull, Jr., survived his father, testator, and died May 12, 1956, without having attained the age of 50 years. No children were born to him. At his death, however, he left to survive him an adopted child, William T. Hull, whom he and his wife, Pauline F. Hull, adopted on February 10, 1949. The child, now 10 years of age, was born March 7, 1947. In an adjudication filed December 27, 1956, we awarded the balance of $94,924.70 available for distribution to The Fulton National Bank of Lancaster as trustee for the use of The Lancaster General Hospital and St. Joseph's Hospital.

On January 14, 1957, Old Colony Trust Company, Boston, Mass., guardian of the minor, William T. Hull, filed exceptions to the adjudication. It contends that of the awarded sum, $2,704.78, should have been awarded to it as guardian for the minor adopted child.

At the audit of the account on which the adjudication of December 27, 1956, was filed, the accountant, The Fulton National Bank of Lancaster, executor of testator's will, asked to be, and was, surcharged with the following item:

"Received from Penn Mutual Life Insurance Co., ½ share of annuity policy No. 1856490 of Nettie G. Hull, deceased, payable under beneficiary designation to the annuitant's administrators, and distributed by the Insurance Company to Estate of Ralph B. Hull, and representing the ½ interest of the Ralph B. Hull Estate in the amount due from interest in the Nettie G. Hull Estate, $2,704.78"

Since counsel for the guardian of the minor adopted child was not aware that this amount was paid by the Penn Mutual Life Insurance Company to the accountant and that a surcharge would be asked for at the audit, we directed on March 13, 1957, that the audit be opened, thus affording the minor's guardian an opportunity to present a claim for the amount of the sur-

charge. This amount is now claimed by the guardian on the ground that the minor, under the terms of the policy of insurance, hereinafter set forth, is a "lawful child" of testator's deceased son.

While the question of the jurisdiction of the orphans' court to determine the ownership of the cash in controversy has not been raised, we conclude that since the proportionate amount of the proceeds of the policy came into the possession of testator's personal representative for administration and ultimate distribution, this court has jurisdiction to determine who is entitled to the said sum of $2,704.78: Keyser's Estate, 329 Pa. 514; Bearinger's Estate, 336 Pa. 253.

The facts have been stipulated by counsel. On September 13, 1934, The Penn Mutual Life Insurance Company of Philadelphia issued a policy, no. 1856490, to Nettie G. Hull, designated therein as "the annuitant," under the terms of which there was to be paid to the annuitant a monthly income of $30.12 commencing September 11, 1949. The policy provided that if the annuitant should die while receiving income payments, the commuted value of any remaining payments shall be payable to her executors, administrators or assigns unless otherwise directed in writing. On October 1, 1934, she executed the following "designation of beneficiary":

"1. Upon the death of myself, the annuitant, any amount payable under said Policy as a death claim or the commuted value of any unpaid income payments under said Policy (hereinafter termed 'net proceeds') shall be retained, subject to the provisions hereinafter stated, under Option 'D' and interest paid thereon (in quarterly portions, first payment at the end of three (3) months from the death of myself, the annuitant) to my husband, RALPH B. HULL during his lifetime; PROVIDED, however, that while receiving interest payments said husband shall have the right, without

the consent of any other beneficiary named herein (by instrument in writing to be recorded at the Home Office of said Company) to withdraw the entire net proceeds in the hands of the Company in one sum, and upon the exercise of such right of withdrawal the liability of the Company shall terminate; PROVIDED FURTHER, however, that if at the death of myself, the annuitant, the net proceeds be less than ONE THOUSAND DOLLARS ($1000), such net proceeds shall be paid in one sum to said husband, if living, and not retained at interest as above provided.

"2. If at the death of myself, the annuitant, said husband be not living or upon his death while receiving interest payments, the net proceeds shall be divided into the number of equal shares which represents one for each of my sons, RALPH B. HULL, Jr. (born May 17, 1916) and WILLIAM T. HULL (born October 2, 1918) then living and one for each of said sons then deceased leaving lawful children then living; the share of any such deceased son to be paid in one sum in equal shares to his or her living lawful children, and the share of any such living son to be retained, subject to the provisions hereinafter stated, under said Option 'D' and interest paid thereon (on the same interest periods as above provided) to such son during his lifetice; PROVIDED, however, that on or subsequent to attaining the age of fifty (50) years and while receiving interest payments, each of said sons shall have the right, without the consent of any other beneficiary named herein (by instrument in writing to be recorded at the Home Office of said Company) to have his share paid to him under Option 'C'; PROVIDED FURTHER, however, that if at the death of the survivor of said husband and myself, the annuitant, the share of each of said sons then living be less than ONE THOUSAND DOLLARS ($1000) such share shall be paid in one sum to such son, and not retained at in-

terest nor paid·out under Option 'C.' as above provided.

"3. Upon the death of either of said sons while receiving interest payments, the share of such deceased son in the hands of the Company shall be paid in one sum in equal shares to his living lawful children, if any, otherwise shall be paid, subject to the provisions hereinafter stated, in one sum to the other of said sons, if living, otherwise shall be paid in one sum in equal shares to such of the lawful children of the other of said sons as may be then living; PROVIDED, however, that if the original share of the other of said sons is being retained under said Option 'D', any additional share payable to him shall be added to such original share and paid and distributed both as to principal and income as it is herein provided such original share shall be paid and distributed, and with the same right; PROVIDED FURTHER, however, that if the original share of the other of said sons is being paid out under said Option 'C' and the additional share payable to such other son be equal to or in excess of ONE THOUSAND DOLLARS ($1000), such additional share shall be paid to such other son in the same manner as it is herein provided his original share shall be paid and distributed.

"4. Upon the death of either of said sons while receiving instalments certain, any remaining instalments certain which such deceased son would have taken if living shall be commuted, and such commuted value paid in one sum in equal shares to such of the lawful children of such deceased son as may be then living, if any, otherwise any remaining instalments certain shall be paid, subject to the provisions hereinafter stated, to the other of said sons if living as each instalment certain falls due, otherwise any such remaining instalments certain shall be commuted, and such commuted value paid in one sum in equal shares to such of the lawful children of the other of said sons

as may be then living; PROVIDED, however, that if the original share of the other of said sons is being retained under said Option 'D'; any such remaining instalments certain shall be commuted, and such commuted value added to such original share and paid and distributed both as to principal and income as it is herein provided such original share shall be paid and distributed, and with the same right.

"5. If at the death of myself, the annuitant, none of said husband, and said sons be living, and there be no living lawful children of either of said sons or upon the death of the last survivor of said husband and said sons while receiving interest payments, if there be no living lawful children of either of said sons, or upon the death of the survivor of said sons while receiving instalments certain, if there be no living lawful children of either of said sons, the net proceeds or the amount in the hands of the Company at interest or the commuted value of any remaining instalments certain shall be paid to my executors, administrators or assigns.

"Wherever the words 'the insured' appear herein they shall be construed to refer to the said annuitant."

Nettie G. Hull, the annuitant, died September 13, 1938, intestate, leaving to survive her her husband, Ralph B. Hull, testator, and her son, Ralph B. Hull, Jr. William T. Hull, her other son, referred to in the foregoing "designation of beneficiary" died August 16, 1937, unmarried and intestate, leaving to survive him his mother, his father and brother Ralph. After the death of the annuitant, her husband, Ralph B. Hull, received the interest under the terms of the policy until his death in 1939. Thereafter the son, Ralph B. Hull, Jr., received the interest until his death. The insurance company, following the death of Ralph B. Hull, Jr., paid one-half of the remaining value of the policy directly to his estate and the other one-half to the estate

of this testator. The latter amount was the subject of the surcharge hereinbefore set forth. The pivotal question is whether the adopted son is entitled to the disputed sum of $2,704.78 as a "lawful" child of the annuitant's deceased son Ralph.

We have on the one hand the contention of the accountant that the "designation of beneficiary" language is in the nature of a testamentary disposition of the proceeds of the policy and that the policy of insurance is to be construed under the rules governing estates created by will. We are, therefore, referred to section 16(b) of the Wills Act of June 7, 1917, P. L. 403 which reads as follows:

"Whenever in any will a bequest or devise shall be made to the child or children of any person other than the testator, without naming such child or children, such bequest or devise shall be construed to include any adopted child or children of such other person who were adopted before the date of the will, unless a contrary intention shall appear by the will."

Prior to that act, it was the established rule that adopted children could not participate in testamentary gifts to children: Yates' Estate, 281 Pa. 178. The quoted section of the 1917 Act modified the rule that adopted children cannot participate in testamentary gifts to "children" only as to persons adopted *before* the execution of the will: Corr's Estate, 338 Pa. 337 (1940). And the section has been held to be inapplicable to cases where testator died before the effective date of the act: Corr's Estate, supra. The Wills Act of April 24, 1947, P. L. 89, sec. 14(6), again changed the law by providing: "In construing a will making a devise or bequest to a person or persons described by relationship to the testator or to another, any person adopted before the death of the testator shall be considered the child of his adopting parent or parents. . . ." In the commissioners' comments it is stated that

"in requiring adoptions to be made before the testator's death, it avoids the possibility of adoptions for the sole purpose of preventing a gift over in default of issue."

In the instant case, if the provisions of the policy are to be construed under the technical rules governing estates created by testamentary devises, is is clear that the adopted minor child must be excluded from participating in the proceeds of the policy.

However, we think it is clear that an insurance policy is not a testamentary disposition, but a contract to be construed as such: Braddock v. Manhattan Life Insurance Co., 16 Dist. R. 127; Brown's Appeal, 125 Pa. 303; Entwistle v. Travelers' Insurance Co., 202 Pa. 141. In Brown's Appeal, supra, the insurance policy was by its terms payable to the wife of the insured, but provided that in the event of her death before the decease of the insured, the amount of the insurance should be payable to her children. On the death of the insured, the wife having predeceased him, the question arose between the assignee of the policy, assigned by the insured and his wife, and the surviving children, as to who was entitled to the insurance money. It is stated, page 309: "Their (the children's) right to the money depended upon the terms of the contract. . . . The condition on which her (the wife's) right to recover was to end and that of her children was to arise has happened, and the contract of the insurance company is now with the children. . . ."

In Lehman v. Lehman, 215 Pa. 344, a widower with six children married a widow with one child and had two children by her. After the marriage he took out a policy of insurance payable "to his wife in trust for herself and their children." It was held that the children by the first wife were entitled to share in the proceeds of the policy and in this connection it is stated, pages 349, 350: "In determining the sense in which they (the words "their children") were used in a con-

tract or in a will regard must be had to the subject-matter. . . . In a doubtful case the courts favor that construction of a will which, consistently with the words of the instrument, will result in a distribution in conformity to the general rules of inheritance. . . . A policy of life insurance, although not a testament, is, like the provisions of a will, to be liberally construed in favor of the ones who may naturally be presumed to have been the special objects of bounty . . .": Citing McNally v. Metropolitan Life Insurance Co., 16 Pa. Superior Ct. 111. A policy of insurance is to be interpreted as the insured understood it, if all points of the contract taken together will admit of such construction: McNally v. Metropolitan Life Insurance Co., supra.

Counsel for the guardian states that he has not been able to find any Pennsylvania case directly in point. Our own research discloses none. He refers us to Turner v. Metropolitan Life Ins. Co., 56 Cal. App. (2d) 862, 133 P. 2d 859, wherein the insured was issued a policy of life insurance under his employer's master group policy. The beneficiary clause of the policy read: "If there be no designated beneficiary at the time when any benefits shall be payable to the beneficiary, then such benefits shall be payable as follows: To the wife or husband, if living, of the employee; if not living, to the children of the employee who survive the employee, equally; if none survives, to either the father or the mother of the employee, or to both equally;" and if none of those mentioned survived the employe, the amount of the policy was to be paid to the estate of the employe. Turner, the insured, had been married, but there were no children of the marriage and his wife predeceased him. It was held that the deceased employe's child, born posthumously and illegitimate shortly after the employe's death, was included within the term "children" and as such was entitled to the

proceeds of the policy. It was pointed out that the rule of the common law still prevailed in California that denies to an illegitimate the right to inherit from his father.

It is stated, page 865: "But it has been definitely held in this state, as in other jurisdictions, that in cases such as this, involving the right to the proceeds of a life insurance policy, the law of contracts and not the law of inheritance is controlling; that beneficiaries under an insurance policy take by virtue of the contract of insurance rather than by the laws of succession; and that the law of descents and distributions has no applicability to such cases. (Estate of Ward, 127 Cal. App. 347, 359 [15 P. 2d 901]; Heydenfeldt v. Jacobs, 107 Cal. 373, 377 [40 P. 492]; Mund v. Rehaume, 51 Colo. 129 [117 P. 159, 161, Ann. Cas. 1913 A. 1243]). Therefore the determinative question here presented is not one of inheritance, but is whether under the rules established for the construction of contracts it was unreasonable for the trial court to hold that the word 'children' as employed in the beneficiary clause of the policy covered all children of the insured; and it is our conclusion that it was not unreasonable so to hold."

We think that case is not decisive of the matter now before us. It is in accord with the decisions herein cited of our own State that the policy must be construed as a contract and not as a testamentary disposition.

The words "lawful children" were construed in Cochran v. Cochran, 95 S. W. 731, 43 Tex. Civ. App. 259. In that case testatrix provided that the share given to one of her sons by her will for life, should, upon his death, without "lawful children," go to the heirs of another devisee. It was held that a child adopted after the death of testatrix was not a "lawful child" within the meaning of the will, notwithstanding

that Texas statutes then in force entitled the person adopted to inherit at law as a child of the adopter.

In construing the policy here as a contract, we quote from Braddock v. Manhattan Life Insurance Co., supra, page 133: "A construction should be avoided, if at all possible, which will render words used frivolous and ineffectual, it being presumed that all words used are intended to have operation and effect, and, as far as possible, the words used are to be given their plain, ordinary and popular meaning."

How then did the annuitant, Nettie G. Hull, understand the contract (see McNally v. Metropolitan Life Insurance Co., supra) and what is the plain, ordinary and popular meaning of the words "lawful children"? At the time the policy was issued to her neither of her two sons was married. Doubtless she contemplated that both of her children would ultimately marry and have children as the result of such marriages. Is it unreasonable, therefore, to conclude that when she used the word "lawful" she intended it to be descriptive of natural children born to her sons? The law makes a distinction between a natural and an adopted child. It gives the latter the right to inherit but it does not change his identity or make him a child in fact: Puterbaugh's Estate, 261 Pa. 235. And in that case it was held that ordinarily and by common usage the word "children" is understood to mean immediate offspring or descendants. If Nettie G. Hull had intended otherwise, would she not have so stated? It is true, as counsel for the guardian states, that the legislative trend has been towards an enlargement of the rights of adopted children, particularly as they pertain to inheritance. And as evidence of the trend, he points to the Statutory Construction Act of May 28, 1937, P. L. 1019, art. VIII, sec. 101, 46 PS §601, which provides that the words "child" or "children," when used in any law thereafter enacted, unless the context clearly indicates

otherwise, "includes children by birth or adoption." We are dealing, however, not with the construtcion of an act but of a contract which came into existence almost three years before the effective date of the act.

A circumstance which we deem significant is that the adoption herein involved occurred more than 10 years after the death of the annuitant, and more than 14 years after she executed the designation of beneficiary, and it cannot be said, therefore, that she knew an adoption was being contemplated. What was said in Puterbaugh's Estate, supra, pages 238, 239, is apposite here: "It is proper enough to assume that he knew of existing legislation that enabled any proper person, by and with the consent of the parent or guardian of a minor child and with the approval of the court, to adopt it as his child and heir; but it is quite as fair and proper to assume that he knew at the same time of the clear distinction the law makes between natural and adopted children; . . ."

We have carefully considered the matter before us and can come to no other conclusion but that the claim of the guardian must be rejected.

And now, August 15, 1957, the exceptions filed to the adjudication of December 27, 1956, are dismissed and the adjudication is confirmed absolutely.