**NG SUEY HI v. WEEDIN, Commissioner of Immigration.**

Circuit Court of Appeals, Ninth Circuit. October 10, 1927.

Rehearing Denied November 7, 1927.

No. 5238.

1. **Citizens** ⬤⇒9—**Daughter of American citizen, born in China of a polygamous marriage, held not entitled to entry as citizen.**

The daughter of a citizen of the United States, born in China of a polygamous marriage, *held* not entitled to entry as a citizen, in the absence of evidence that she was subsequently legitimated.

2. **Bastards** ⬤⇒1—**At common law, "bastard" is one begotten and born out of lawful wedlock.**

"Bastard" is defined at common law as an illegitimate child; a natural child; one who is not only begotten, but born, out of lawful wedlock.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bastard.]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Petition of Ng Suey Hi against Luther Weedin, Commissioner of Immigration at the Port of Seattle, Wash., for writ of habeas corpus. From a decree denying the writ, petitioner appeals. Affirmed.

For opinion below, see 20 F.(2d) 266.

John J. Sullivan and George E. Mathieu, both of Seattle, Wash., for appellant.

Thos. P. Revelle, U. S. Atty., and Arthur E. Simon, Asst. U. S. Atty., both of Seattle, Wash., for appellee.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. This is an appeal from an order denying a petition for a writ of habeas corpus. The appellant based her right to admission to the United States on the citizenship of her father. The record in the case is very voluminous, consisting as it does of immigration records in this and nine other cases, but there is little controversy over the material facts. The father of the appellant was born in the state of California and is a citizen of the United States. He went to China at an early age and there married a woman of the Chinese race. About three years later, and while the first wife was still living, he married a second woman of the Chinese race, and cohabited with the two women in the same household until the death

of the former. When her death occurred, if at all, is by no means clear from the testimony, as many different dates were given by different witnesses at different hearings. The testimony is quite clear, however, that the appellant is the offspring of the second or polygamous marriage and was born during the lifetime of the first or lawful wife.

A half-brother of the appellant came to the United States in 1909, returned to China in 1915, came back to the United States in 1919, and in December, 1923, made application for a return certificate as a citizen of the United States. In support of this application he testified, among other things, as follows: "Q. Describe your sister. A. Her name is Suey Hi; age, 21 years. She married after I returned to the United States." There was no other or further testimony as to the marriage, and numerous witnesses having personal knowledge of the facts testified that the appellant was not and never had been married.

In recommending a dismissal of the appeal, the Board of Review said: "Some features of the record throw some doubt on the applicant's claimed relationship to her alleged father, but a person of her name has been mentioned on many occasions in the past and there is a reasonable resemblance between her and her alleged father. For these reasons, the strongest evidence against her citizenship status is that indicating that she was not born a citizen of the United States and that, if she was born a citizen, she has probably forfeited her citizenship by reason of marriage."

[1] The court below denied the petition on the latter ground only. If the case rested solely on the question of marriage, we would be loath to affirm the order appealed from. The only evidence of marriage was the hearsay statement above set forth, which shows upon its face that the witness had no personal knowledge of the fact, and, if a citizen of the United States can be excluded on a mere statement of that kind, made in a collateral proceeding by a person who has no apparent knowledge of the facts, his rights are indeed precarious. But we do not find it necessary to base our decision on that ground. The question presented by the first ground or reason stated by the board is more important, and its solution by no means free from difficulty. As appears, from what we have already said, the appellant is the offspring of a polygamous marriage.

"The general rule is that the validity of a marriage is determined by the law of the place where it was contracted; if valid there,

it will be held valid everywhere; and, conversely, if invalid by the lex loci contractus, it will be held invalid wherever the question may arise. An exception to the general rule, however, is ordinarily made in the case of marriages repugnant to the public policy of the domicile of the parties, in respect of polygamy, incest, or miscegenation, or otherwise contrary to its positive laws." 38 C. J. 1276.

"It is implied in the conception of marriage in all Christian countries that the relation can exist only between one man and one woman, a polygamous or polyandrous union being under the law no marriage." 38 C. J., 1274.

[2] A bastard is defined at common law as an illegitimate child; a natural child; one who is not only begotten, but born, out of lawful wedlock. The marriage of the father to the mother of the appellant was a polygamous one and cannot be recognized by the courts of this country. She was therefore illegitimate, and her citizenship must be determined by reference to that status. In reference to the citizenship of illegitimate children, the rule is thus stated in 11 C. J. 780:

"Illegitimate children, born abroad of citizens, being nullius filii, are not within the contemplation of section 1993 of the United States Revised Statutes, and hence are not themselves citizens. Similarly, in England, the children of natural born subjects who, under St. 4 Geo. II, c. 21, are to be considered natural-born subjects of the kingdom, must have been legitimate from birth, and not rendered so by the subsequent marriage of their parents."

In this connection, our attention has been directed to an opinion of an assistant to the Attorney General, addressed to the Secretary of State (32 Op. Attys. Gen. 162), in which he said:

"The State Department has for many years held that a child born out of wedlock, which, by the laws of its father's domicile has been legitimated, is a citizen of the United States, within the meaning of Revised Statutes, § 1993. There appears to be no considerations of public policy which require a different decision."

Based on this rule the Secretary of State was advised that certain illegitimate children born of a citizen of the United States in a foreign country had been legitimated in accordance with the laws of their father's domicile, and were therefore citizens; but in another case, where there had been no such legitimation, the Secretary was advised that the illegitimate child was not a citizen.

On principle, it would seem that the appellant was a citizen of the United States at birth, or not at all. She was then either a citizen of the United States or a subject of China. If the latter, it is by no means clear how she could become a citizen by any act of her parents, unless authorized by some act of Congress. But, however this may be, we are far from convinced that Congress intended to confer the right of citizenship on illegitimate children born abroad, or upon the offspring of polygamous marriages, and, if it be conceded that such illegitimate children would become citizens by subsequent legitimation by their parents, there is no evidence of such legitimation in this case. The appellant contends that her father continued to live with the second wife after the death of the first, and repeatedly recognized the appellant as his daughter, and that she thereby became legitimate. But at common law an illegitimate child could only be made legitimate by act of Parliament, and such is the law in this country. The laws of the different states prescribe in what manner an illegitimate child may be rendered legitimate; in some cases by the subsequent marriage of their parents, in others by judicial proceedings, and in still others by public recognition. Here there was no subsequent marriage of the parents so far as the record discloses.

"If intercourse between persons of opposite sex was illicit in its inception, because of their failure to enter into a marriage by ceremony or by agreement, it is presumed to continue so, and the burden of proving a subsequent intermarriage rests on the party asserting it." 38 C. J. 1328.

If the appellant could only be rendered legitimate by steps taken according to the laws of the domicile of her father, it would be extremely difficult from the present record to say what law should control. He was born in California, lived for many years in China, and at the time of the hearing was apparently a resident of the state of New Jersey.

There is, therefore, before us no competent testimony tending to show that the appellant was rendered legitimate, and for that reason the order of the court below is affirmed.