Marie **BALLENTINE**, as Guardian of the Estate of Stephen William Ballentine, Appellant,

v.

Marie **DE SYLVA**, Appellee.

Marie **DE SYLVA**, Appellant,

v.

Marie **BALLENTINE**, as Guardian of the Estate of Stephen William Ballentine, Appellee.

No. 13880.

United States Court of Appeals Ninth Circuit.

Aug. 25, 1955.

James Alger Fee, Circuit Judge, dissented.

**624**

Fink, Levinthal & Kent, Max Fink, Cyrus Levinthal, Leon E. Kent, Los Angeles, Cal., for appellants.

McCormick, Norris & Horgan, Pat A. McCormick, Patrick D. Horgan, Floyd H. Norris, Los Angeles, Cal., for appellees.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

STEPHENS, Circuit Judge.

This litigation began with the filing in the United States District Court of a complaint by Marie Ballentine, as Guardian of the Estate of Stephen William Ballentine, a minor, as plaintiff, for declaratory relief against Marie DeSylva, as defendant. The defendant filed motions to dismiss the complaint, to strike therefrom, and for enlargement of time. The district court denied the motion to dismiss, and the other motions seem never to have been acted upon. The defendant answered the complaint, and in the answer herself prayed for a declaratory judgment.

Upon these pleadings, together with an agreed "Statement of Undisputed Facts", "Stipulation Re Statement of Facts", and affidavits, the cause was submitted to the district court upon the defendant's motion for a summary judgment over the objection of the plaintiff. The plaintiff also made a motion for summary judgment which was not directly ruled upon. Findings of fact and conclusions of law, and judgment for defendant followed, to the effect that:

(1) Defendant is the sole owner of all right to renewals and extensions of all copyrights in which George G. DeSylva, now deceased, had an interest.

(2) Plaintiff is not entitled to an accounting.

The plaintiff appealed from the judgment.

The defendant appealed from that part of the judgment, as set out in her notice of appeal, to-wit, wherein said judgment includes and makes a part thereof the following portion of the Conclusions of Law made by the Court herein:

"(2) That Stephen William Ballentine is a child of George G. DeSylva, deceased, within the meaning of the statutes of the United States relating to copyrights."

Neither party makes any point on appeal as to the propriety of the district court's action in submitting the cause for a summary judgment.

In the interest of keeping the parties correctly in mind we shall, throughout this opinion, refer to the plaintiff-appellant and cross-appellee, Marie Ballentine, as the plaintiff or the plaintiff-mother, and to the defendant-appellee and cross-appellant, Marie DeSylva, as the defendant or the defendant-widow.

George G. DeSylva, who died July 11, 1950, was the author of numerous musical compositions which were copyrighted. Marie DeSylva, the defendant, is his surviving widow. Acting under claimed rights as she construed Section 24 of Title 17 United States Code Annotated, she applied for and received renewals of certain of the copyrights above referred to. Other of the copyrights will, in the future, be subject to renewal.

Marie Ballentine, the plaintiff, is the mother of her ward, Stephen William Ballentine, and George G. DeSylva was his father. The parents were never married. The plaintiff brought the action for a declaratory judgment praying for an adjudication that the child together with the widow as a class, possesses the right to copyright renewals and that the widow, having acted to acquire and having acquired renewals, must account to the child as to benefits received and also account upon future receipts of benefits.

The defendant widow disagrees with the plaintiff mother, and contends that her rights are not in a class with those of the child but are in a preferential class. She also contends that, under the applicable sections of the copyright statute the rights given to "children", as that word is used in the statute, encompass rights to legitimate children only.

The trial judge, in his Findings of Fact and Conclusions of Law, determined that Stephen William Ballentine was the "child" of George G. DeSylva under the applicable section of the copyright law, in conformity with the plaintiff-mother's claim, but construed the copyright statute as providing that the surviving widow, the defendant, has a preferential right over the child. Under such construction, the judgment went for the defendant widow in accordance with her claim that she has the first right and, consistently, no accounting was required.

## Is the Widow in a Class With the Child?

We turn directly to the statute, Title 17 U.S.C.A. § 24, which reads in part:

> "That * * *, the author of such work, if still living, or the widow, * * * or children of the author, if the author be not living, or if such author, widow, * * * or children be not living, then the author's executors, or in the absence of a will, his next of kin shall be entitled to a renewal and extension of the copyright * * *." July 30, 1947, c. 391, § 1, 61 Stat. 652.[1]

Without § 24, the author's work automatically would enter the public domain upon the expiration of the original copyright term. Under the Act including § 24, the original copyright and its ownership, upon expiration of the term of the copyright, is dead; but a new copyright may issue. And it may issue only to and upon application of certain persons who fall into several different categories, as to preference. In this manner the Congress has acted to extend the benefits of the author's work beyond the original copyright term to the author and after his decease to persons who are the natural objects of the author's bounty, and if none, to others under the formula of the Act. The right, sometimes called the renewal right, after the author's death goes directly, and not by inheritance, to indicated members of his family who survive him. If none of the family survives him and there is a will, the right to act goes to the person or persons whom the author has designated as executors. If there is no will and no surviving member of the immediate family, then to the next of kin. The unexercised right itself never goes into a deceased person's estate as property. As to the assignment of expectancy of right of renewal, see Edward B. Marks Music Corp. v. Jerry Vogel Music Co., D.C. S.D.N.Y., 1942, 47 F.Supp. 490; Carmichael v. Mills Music, D.C.S.D.N.Y., 1954, 121 F. Supp. 43.

It is the logic of the plaintiff-mother that the children of the author are as definitely objects of the author's natural bounty as the widow, and, consistent with the purposes of the Act, that the phrase, "or the widow, * * * or children of the author," does not mean *either the widow or the children,* the one to the exclusion of the other, but means both together as one classification. She supports her contention by pointing out that there is in the Act a qualifying phrase between each of the enumerated classes which are entitled to the right. Thus, the *author* is entitled to the renewal, and then follows the qualifying phrase, "if [he is] still living"; next the *widow or children* are entitled to the renewal, and then follows the qualifying phrase, "if the author be not living". It will be noticed that in the Act there is no qualifying phrase between "widow, * * * or children of the author" to separate the one from the other as separate enumerated classes. By the structure of the Act it would follow that the widow

---

1. For history of § 24, see "Historical Note" following § 24 of Title 17, U.S.C.A.

with the children constitute one inseparable class. There is much to commend the logic of this construction. It is not illogical to grant the renewal right to the author, but after his or her decease to the family as a group, mother and children or father and children, for the family's benefit. There is merit in the plaintiff-mother's viewpoint that the defendant-widow, who in this case is not the mother of the subject child, is not in a class separate from and exclusive of the author's children, else there would have been a separating phrase in the Act such as, "or if the widow is not living, then the children".

The mother, acting for and in the interests of the boy, points out that an early draft of the Copyright Act had in it such a qualifying phrase, but that the phrase was dropped in the draft adopted, and she argues therefrom that the Congressional intent was to place the surviving spouse and children in a class together as those first entitled to the renewal of the copyright after the death of the author. She also points to Circular 15 of the Copyright Office,[2] as sustaining the interpretation she contends for. An excerpt from it is quoted in the margin in footnote 2.

2. "The following persons are entitled to claim a renewal copyright:

"1. Aside from the groups of works mentioned in Paragraph 2, below, *renewal copyrights in all works* (including works by individual authors which appeared in periodicals or in cyclopaedic or other composite works), may be *claimed* by the following *groups* of persons:

"a. The author of the work, if he is still living at the time when renewal is sought.

"b. *If the author is not living, his widow* (or widower), *or children may claim renewal.*

"c. If neither the author, his widow (or widower), nor any of his children are living, and the author left a will, the author's executor may claim renewal.

"d. If the author died without leaving a will, and neither his widow (or widower) nor any of his children are living, his next of kin may claim renewal." [Emphasis added] Circular 15 of the Copyright Office, entitled "Instructions for Securing Registration of Claims to Renewal Copyrights" excerpt as quoted by plaintiff-mother (appellant) in her opening brief, p. 9, note 7.

The above statement is consistent with the letter of Mr. George D. Cary, Principal Legal Advisor to Copyright Office, which letter constitutes note 8 on page 10 of appellant's (plaintiff-mother's) brief. We have not considered this letter, since the record is not clear that it was in evidence. We do not take judicial notice of it.

Both sides concede that there are no decided cases upon the point, and the mother is right in asserting, at page 9 of her opening brief:

"In the absence of direct case authority, the construction [by] those charged with the duty of executing the statute is entitled to persuasive weight and ought not to be overruled without cogent reasons."

See Tannenbaum, Practical Problems in Copyright, CCH Law Handbook—7 Copyright Problems Analyzed (1952), pages 7, 12:

"Whether the widow takes precedence over the children in renewing the copyright has not been adjudicated, although this question is constantly troubling the Copyright Bar. The sound and only proper view is that the widow and children are members of the same class, any member of which can apply for the renewal and obtain legal title to the renewal, but he will be deemed a trustee thereof for the other members of the class. If it were the intention to give the widow precedence over the children, the Act would have so stated. The section would then have read, that the widow could renew, if the author is not living, or if neither the author or widow is living, then the renewal should be by the children.

"The injustice of holding otherwise is evident in the case where an author has been married several times and was survived by children by a prior marriage.

"Could it be said that the Act intended that the wife who was the widow at the death of the author should take the entire renewal to the exclusion of the children by a prior marriage? Where the widow and several children survive, and one child files a renewal, he holds the legal title for himself as trustee for the widow and each of the other children."

See, also, 2 Warner, Radio and Television Rights, 246, Sec. 81; 2 Socolow, The Law of Radio Broadcasting, page 1218. Compare Silverman v. Sunrise Pictures Corp., 2 Cir., 1921, 273 F. 909, 912, certiorari denied 262 U.S. 758, 43 S.Ct. 705, 67 L.Ed. 1219.

Returning to the construction of the Act, we read it as providing for a new right by the renewal of the copyright. First, the author may act under the right. Next, but after the author's death, either the widow or the children are free to act. And it is highly important to observe that the "right" of the renewal never goes into an estate of a decedent. If not acted upon, the right dies. And the possession of the right is provided for in the Act and is not dependent upon or fixed by the law of descent.

But if we are to assume that the Congress meant to prefer one or the other, which one, the children or the spouse, is preferred? Can it be that the one who acts first gets the prize? We know of no language construction in English or in the law which confers a right over another merely because one is first named in a category of two or more, each of which is separated by a disjunctive. We think the right to the renewal is granted to the class through action by the surviving *spouse or children.*

Here there is not a designation of one over the other, and the word "or" is given its full disjunctive meaning. The Act does not say, as contended by the widow, that upon the author's death the widow may act and if the widow is dead the children may act; it plainly says that *either* may act if the author (husband-father) dies. And it would be entirely out of the beneficent purpose of the Act to construe it as providing that when either acts, the other is cut off. It would seem reasonable to say that if additional words must be added to construe the sentence so as to fit either contention made by the parties, words should be added which best place the Act in implementation of its purposes.

Defendant widow cites the case of Travers v. Reinhardt, 1907, 205 U.S. 423, 27 S.Ct. 563, 565, 51 L.Ed. 865, as a case wherein the court, in a situation said to be "in much the same circumstances" as in our case, refused to construe the word "or" as "and", as she argues must be done in our case if the widow with the child constitute one class. The circumstances in the cited case, as it seems to us, were very different from those of our case. In the cited case a testator in a codicil or will used the phrase " 'without leaving a wife or a child or children' ". It was claimed that the testator meant, without leaving a " 'wife *and* child' ". The argument was that the testator intended his real estate to descend through the line of his sons. The court held that it saw nothing in the circumstances to indicate any intention to use the word in any but the disjunctive sense. We do not think the case is persuasive to defendant's point.

And we say the same for another case treated in the brief: Silverman v. Sunrise Pictures Corp., 2 Cir., 1921, 273 F. 909, 911. Therein the court says:

"The purpose * * * is to give to the persons *enumerated* in the order of their *enumeration* * * * a new creation for the benefit (if the author be dead) of those naturally dependent upon or properly expectant of the author's bounty." [Emphasis added.]

But the order of *enumeration* is not necessarily the right of the widow over the right of the children for, as pointed out above, the second enumeration would seem to include both as a class with the privilege of *either* widow *or* children to act for both. See Silverman v. Sunrise Pictures Corp., 2 Cir., 1921, 273 F. 909. And certainly, both can be properly expectant of the author's bounty, and in many states including California parents are legally liable to support their children.

The defendant widow cites Vol. 18, C.J.S., Copyright and Literary Property, § 79, p. 204, wherein it is stated in the text, that the renewal of the copyright is in:

" * * * the author, if living, or in the author's widow, widower, children, executors, or next of kin *in the order stated* * * *." [Emphasis added.]

This text is a carry-over from Vol. 13 Corpus Juris 1090, § 239. It will be noticed that the text of the statute is not quoted. The commentator (in C.J.S. and in Corpus Juris, supra) entirely misses a correct statement which gives rise to the issue in the instant case, by omitting the "or" which, in the statute, is between the words "widower" and "children", and by omitting the word "then" just before referring to "executors". The commentator gives no meaning whatever to the qualifying phrases. The subject sentence reads:

"* * * the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or in the absence of a will, his next of kin shall be entitled to a renewal and extension of the copyright in such work * * *." Title 17 U.S.C.A. § 24, Copyrights.

It is clear that the commentator followed his preconceived meaning of the Act, rather than the text of the Act. Then, upon such preconceived idea, he completely omits any mention of the fact that there is an intervening qualifying phrase between all of the categories except the category which includes both spouse and children. The absence of the qualifying phrase between "widow, widower" and "or children of the author" indicates, we think, rather plainly that the expression in the Act, "widow, widower, or children of the author," is one inseparable category or enumeration of the several persons who are given the right of renewal. But the commentator by his own boot-straps interpolates his own phrase "in the order stated," citing only White-Smith Music Publishing Co. v. Goff, 1 Cir., 1911, 187 F. 247.

The text in Vol. 34 American Jurisprudence 423, § 32, is much the same, though the phase "in the order named" is not used; however, the expression that the right goes to those "in the order of enumeration" is used. We have herein-before treated that expression. There is no decided authority cited.

Margaret Nicholson, in her "A Manual of Copyright Practice" (1945), interpolates, but without analysis or authority, at page 195:

"The publisher may renew the copyright in the name of the widow or widower, *if* there is one; of the child or children, *if there is no widow or widower* * * *." [Emphasis added.]

No place in the statute is there any such phrase, *"if there is one,"* nor is there any such phrase as *"if there is no widow or widower"*. These phrases are mere additions to the statute to support the commentator's opinion. There is no showing whatever as to the course of reasoning followed in arriving at such opinion.

To the same effect are the following: "Risks and Rights in Publishing, Television, Radio" etc., by Samuel Sprigg; "An Outline of Copyright Law" (1925) by Richard C. De Wolf; 28 Op. Attys. General 162, Ass't Attorney General Fowler.

We conclude that the word "or" between the words "widower", "children", must be construed as expressing the alternative and means that either one or the other may act for the family which consists of the widow (or widower) and all of the children. See Pierpont v. Fowle, 19 Fed.Cas. page 652, No. 11,152.

### Is the Illegitimate Child Excluded From All Rights Under the Renewal Privileges of the Copyright Act?

Since we have determined that the right of renewal of the copyright of a deceased author is in the class designated in the Act as "widow, widower, or children", and such renewal is for the benefit of the surviving spouse and children together, we must determine whether in our case the son of the author, having been born outside of wedlock, qualifies as a "child" under the meaning of the Copyright Act. The trial court found, as we have said, that the subject illegitimate

child does so qualify. The finding is quoted in the margin.[3]

█ In approaching the problem just stated, it will be well to have clearly in mind the fact that the right conferred by the Copyright Act is not a renewal or extension of a property which descends in an estate but is a new, personal grant of a right. Such right is a newly granted and created one, without which or without action under it, the work of the author would enter the public domain.

In both the common law and the civil law, the legal rights and privileges of the child born out of wedlock were severely restricted. He occupied a status in social relation to others tainted with disgrace as the product of shame. As time went on, the harshness accorded the child softened, but has never been completely eliminated. Convention is based upon a phase of common opinion more or less reasonable at a given time, but sometimes persists under the illogic of prejudice long after the reason for it has expired.

Both Blackstone and Kent state that the common law legal restrictions upon illegitimate children are in relation to property inheritance and to qualification to hold church office.[4]

█ The English law as to property inheritance became a part of the basic law of the United States, but since our Constitution provided for the complete separation of Church and State, the restrictions as to church offices were foreign to our system of government.

Without going into detail as so many opinion writers have done resulting in considerable confusion and inconsistencies, it suffices to say that the very old English law shut out illegitimates from inheriting from either parent, but later the law allowed them to inherit from the mother only. Such was the common law of England and her American colonies, and continued as to the basic American law after Independence. This is not to say, however, that the English common law as of the date of our Independence was from that date static. On the contrary, it continued to change as it had done through the years in its original habitat, to meet the changes in our own civilization. The harshness of one generation may be tempered in the next by judicial cognizance of material change.

█ The old English rule was that the illegitimate child is the child of no one, or *quasi nullius filius,* hence is not a child at all where the word "child" or "children" is used in the devolution of real property, except in circumstances showing the opposite intention. If it may continue in this country except where modified by statute, we think there is no occasion to extend its application beyond the original purpose, and courts of both federal and state jurisdiction show a decided trend in that direction.

The old English case of Wilkinson v. Adams, 1812, 1 Ves. & Bea. 422, 462, 35 Eng.Rep. 163, 179, is cited by the defendant-appellee widow in our case as authority for the limitation put upon the meaning of the word "child". We have analyzed the argument of counsel in that case which is set out in extenso in the report and advisory opinion of three judges, and in the extensive opinion by Lord Eldon. It is held in the latter's opinion that in the construction of a will in relation to real estate, the word "child" (or children) will not be taken to

---

3. "IV. That decedent during his lifetime acknowledged in writing that plaintiff, Stephen William Ballentine, was his child; that said acknowledgments were made before witnesses and constitute acknowledgments within the meaning of Section 255 of the Probate Code of the State of California." Findings of Fact and Conclusions of Law on Summary Judgment, Record p. 29. And the trial court made a Conclusion of Law, as follows:

"(2) That Stephen William Ballentine is a child of George G. DeSylva, deceased, within the meaning of the statutes of the United States relating to copyrights." Ibid, p. 32.

4. See Blackstone (1 Bl.Comm.New Ed., 1825) 492; Kent, Commentaries on American Law (11 Ed., 1867) Vol. 2, p. 230; Ayer, Legitimacy and Marriage (1902); 16 Harv.L.Rev. 22, 23.

include an illegitimate child unless it can be gleaned from the will itself that such was the intent of the testator. That in case such intent is found, either from direct statement or by reasonable inference, an illegitimate child does not take until and unless it has acquired through "Time and Reputation" an identity as the child of the testator. The case is replete with analyses of precedent cases, several of which reveal that the judges rendered their decisions adverse to the interest of illegitimate children with great reluctance because circumstances outside the wills themselves indicated plainly that the testators meant their bounty to go to the illegitimate children. In some cases the harsh ruling was avoided through stratagem. It is interesting to note that the opinion of Lord Chancellor Eldon at the outset is specific that the point considered "regards the real estate" as the title is affected by the will. And the Lord Chancellor, in the course of his opinion, states that the limitations as to the *prima facie* meaning of the word "child" derives from Coke, and the citations are solely "Cases of Deeds". Coke, in Co.Lit. 3b. To the same intent is the case of McCool v. Smith, 1861, 1 Black 459, 66 U.S. 459, 470. A sweeping statement used in the McCool case has had wide quotation, sometimes out of context. The statement is:

"By the rules of the common law, terms of kindred, when used in a statute, include only those who are legitimate, unless a different intention is clearly manifested."

The statement would be more accurate and would be within the issues of the case it was used in if it had had words limiting it to the statutes referring to

title or succession of real property. See Heller v. Teale, D.C., 1914, 216 F. 387, 398, citing McCool v. Smith, supra.

We think these leading cases are confirmative of the theory that the limitation put upon the word "child" is based upon the importance of land titles and inheriting of land interests, that they are not properly authority for extensions of the doctrine outside the original purpose of the limitation. Since the doctrine arose from consideration of real estate transfers and succession, we see no necessity or legal propriety in holding that Congress intended, in enacting the Copyright Act, to exclude the illegitimate children of the author if the widow survived, and that such intention cannot be read from the text of the Act.[5]

It is true that it was said in the English case of Dickinson v. North-Eastern Ry. Co., 1863, 9 Law Times Rep. 299, 300 (Pollock, C.B.):

"We have no doubt that in this act of Parliament [Lord Campbell's Act, 9 & 10 Vict. c. 93], as in all others, the word 'child' means 'legitimate' child only."

The cited case appears to be contrary to the theory which we approve, as it extended the limitation to the benefit of recovery of damages.

In Hutchinson Investment Co. v. Caldwell, 1894, 152 U.S. 65, 68, 14 S.Ct. 504, 38 L.Ed. 356, the United States Supreme Court was called upon to construe the federal land preemption law. The decision was that the word "heirs" should be construed, not as those who could be heirs at common law but as those who could be heirs in the state in which the land lay. We quote from the Supreme Court's opinion in the margin.[6]

5. It will be noted that there is no problem as to the identity of the illegitimate child in the instant case, as it is agreed in the "Statement of Undisputed Facts" by the parties that the child Stephen is the illegitimate child of the author and has been publicly acknowledged by the father-author as such. Record on Appeal, p. 21.

6. "We are unable to concur with counsel for plaintiffs in error that the intention should be ascribed to congress of limiting the words 'heirs of the deceased preemptor,' as used in the section, to persons who would be heirs at common law, (children not born in lawful matrimony being, therefore, excluded,) rather than those who might be such according to the *lex rei sitae*, by which, generally speaking, the question of the descent and heir-

In the case of Middleton v. Luckenbach S. S. Co., 2 Cir., 1934, 70 F.2d 326, 329, 330, the issue was whether an illegitimate child could recover for the death of its mother, and whether a mother could recover for the death of an illegitimate child under the Federal Death Act of 1920, Title 46 U.S.C.A. § 761, which provided for damage suits for the benefit of decedent's wife, husband, parent, child, or dependent relative. To the same general effect, see Compagnie Generale Transatlantique v. United States, 1948, 78 F.Supp. 797, 111 Ct. Cl. 601. We quote from the Middleton, supra, opinion in the margin.[7]

ship of real estate is exclusively governed. If such had been the intention, it seems clear that a definition of the word 'heirs' would have been given, so as to withdraw patents issued under this section from the operation of the settled rule upon the subject. * * *

"But it is contended that the word 'heirs' was used in its common-law sense, and it is true that technical legal terms are usually taken, in the absence of a countervailing intent, in their established common-law signification, but that consideration has no controlling weight in the construction of this statute. Undoubtedly the word 'heirs' was used as meaning, as at common law, those capable of inheriting, but it does not follow that the question as to who possessed that capability was thereby designed to be determined otherwise than by the law of the state which was both the *situs* of the land and the domicile of the owner.

"The object sought to be attained by congress was that those who would have taken the land on the death of the preemptor, if the patent had issued to him, should still obtain it, notwithstanding his death,—an object which would be in part defeated by the exclusion of any who would have so taken by the local law if the title had vested in him. * * * If the provision admitted of more than one construction, that one should be adopted which best seems to carry out the purposes of the act. * * *" Hutchinson Investment Co. v. Caldwell, 1894, 152 U.S. 65, 68, 69, 14 S.Ct. 504, 505, 38 L. Ed. 356.

"There is nothing to the contrary in McCool v. Smith, [1861] 1 Black 459 [66 U.S. 459, 470], which was a case coming to this court from Illinois, in which it was held that the meaning of the words 'next of kin' was to be determined by the common law of England, *because the common law in that regard was then in full force in that state.*

"The language of the acts of congress has not been uniform in the matter of the disposition of the public domain, after the death of the principal beneficiary. Thus, under section 2443, in respect of bounty lands granted to officers and soldiers of the Revolutionary War or soldiers of the War of 1812, the patent, when applied for by part of the heirs, was to be issued in the name of the heirs, generally, and to inure to the benefit of the whole in such portions as they were severally entitled to *by the laws of descent in the state or territory of the decedent's domicile;* and other illustrations might be given." Hutchinson Investment Co. v. Caldwell, supra, 1894, 152 U.S. 65, 70, 14 S.Ct. 504, 506, 38 L.Ed. 356.

7. "[4, 5] There is no right of inheritance involved here. It is a statute that confers recovery upon dependents, not for the benefit of an estate, but for those who by our standards are legally or morally entitled to support. Humane considerations and the realization that children are such no matter what their origin alone might compel us to the construction that, under present day conditions, our social attitude warrants a construction different from that of the early English view. The purpose and object of the statute is to continue the support of dependents after a casualty. To hold that these children or the parents do not come within the terms of the act would be to defeat the purposes of the act. The benefit conferred beyond being for such beneficiaries is for society's welfare in making provision for the support of those who might otherwise become dependent. The rule that a bastard is nullius filius applies only in cases of inheritance. Even in that situation we have made very considerable advances toward giving illegitimates the right of capacity to inherit by admitting them to possess inheritable blood. 2 Kent's Commentaries (12th Ed.) 215." Middleton v. Luckenbach S. S. Co., 2 Cir., 1934, 70 F.2d 326, 329, 330, certiorari denied, 1934, 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674. See Civil v. Waterman S. S. Corp., 2 Cir., 1954, 217 F.2d 94, wherein the doctrine of the Middleton case was reaffirmed; also Lawson v. United States, D.C.S.D.N.Y., 1950, 88 F.Supp. 706, 709, wherein the court quotes from Middleton with emphasis upon the point of dependency, as in the Middleton case. In

**632**

It is not disputed that the subject son was born an illegitimate child and as such was not entitled, under the common law, to receive property as an heir of his father unless under statutory rights. California law on the subject has been changed by Section 255 of the Probate Code to so provide. We quote in the margin.[8] The referred to section 255 of the California Probate Code is not a legitimation statute but, as the California Appellate Court said in Wong v. Wong Hing Young, 1947, 80 Cal.App. 2d 391, 394, 181 P.2d 741, 743, it is:

" * * * simply a statute of succession. [Citing cases.]"

Section 230 of the California Civil Code is an out and out legitimation statute, but legitimation under it requires the consent of the wife if the father of the child is married. The father in our case had a wife and there is no allegation or proof that she ever gave her consent to the legitimation of the subject illegitimate child. We quote § 230 in the margin.[9]

We come then to the definite conclusion that the son Stephen has never been legitimated and that if the right of the renewal of the copyright is accorded only

to a legitimate child, the judgment must be affirmed, not upon the ground found by the trial court, to-wit, that the widow is in a preferential class over that of the child, but because the Act does not encompass illegitimate children. We think the judgment cannot be affirmed upon such or any ground.

A most interesting case to consider in connection with this phase of our case is In re Estate of Wardell, 57 Cal. 484, decided in the January 1881 term of the California Supreme Court. The case derives from the fact that a woman failed to mention her illegitimate child in her will. The California law then (and now) authorized a woman to dispose of her property by will and she could cut off any or all of her legal heirs by her will; and it then provided, by § 1307[10] of the California Civil Code, as quoted in the Wardell case, supra, 57 Cal. at page 490, that:

" * * * when any testator omits to provide in his will for any of his *children*, or for the issue of any deceased *child*, unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator as if he had died in-

our case, the illegitimate son is a dependent of the father and mother. See Tetterton v. Artic Tankers, Inc., D.C. E.D.Pa., 1953, 116 F.Supp. 429, 432.

8. § 255. "Every illegitimate child is an heir of his mother, and also of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father, and inherits his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; but he does not represent his father by inheriting any part of the estate of the father's kindred, either lineal or collateral, unless, before his death, his parents shall have intermarried, and his father, after such marriage, acknowledges him as his child, or adopts him into his family; in which case such child is deemed legitimate for all purposes of succession. An illegitimate child may represent his mother and may inherit any part of the estate of the mother's kindred, either lineal or collateral." § 255, California Pro-

bate Code, enacted 1931; amended by Stats.1943, ch. 998, p. 2912. The section recast former § 1387 of California Civil Code.

9. § 230. "Adoption of Illegitimate Child. The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this Chapter do not apply to such an adoption." [Enacted 1872] Deering (1949) Civil Code of California, § 230. West's Ann.Cal.Civ.Code, § 230.

10. Enacted 1872; Repealed by Stats.1931, p. 687, § 1700 of California Probate Code. Cf. § 90 of California Probate Code, enacted 1931, based on former §§ 1306, 1307, and 1309 of California Civil Code (Deering, 1944), which incorporates generally the repealed section 1307.

testate." [Emphasis added.] § 1307 of California Civil Code, as quoted in the Wardell case, supra, 57 Cal. at page 490.

It was found in the cited Wardell case, supra, that such omission by the testatrix did not appear to be intentional, and that "children" as used in the statute included those who would take as her heirs, even if they were illegitimate.

In Turner v. Metropolitan Life Ins. Co., 1943, 56 Cal.App.2d 862, 865, 133 P.2d 859, the California Appellate Court held that the word "children" in an insurance policy included illegitimate children. After discussing the common law *nullius filii* status of illegitimate children and the later modification of that ancient and harsh doctrine, the court held that the argument of counsel as to limitation upon the meaning of the word "children" would be pertinent if the pending question related to the child's right to inherit from his father, but that beneficiaries under an insurance policy take by virtue of the contract of insurance rather than by the laws of succession, and that the law of descents and distributions has no applicability to such cases. See also Perry v. Manning, 1952, 109 Cal.App.2d 557, 241 P.2d 43. We quote from the Turner, supra, opinion in the margin.[11]

The widow-defendant cites the case of Louie Wah You v. Nagle, 9 Cir., 1928, 27 F.2d 573, decided by this court in 1928. The appeal was from an order of the district court quashing a writ of habeas corpus and remanding the appellant to the custody of the immigration authorities. The appellant had alleged and claimed United States citizenship as one born of a United States citizen. The appellant was the illegitimate offspring of a Chinese woman in China and of a man who was a United States citizen. At the relevant time there was in effect Section 1993 of Revised Statutes, Title 8 U.S.C. § 6, of the United States which provided in the chapter on "Citizenship", so far as is pertinent here, that:

"All children born out of the * * * jurisdiction of the United States, whose fathers may be * * * citizens of the United States, are declared to be citizens of the United States; * * *." Mar. 2, 1907, c. 2534, §§ 6, 7, 34 Stat. 1229.

This court affirmed the district court order upon the holding that the term "children" in the statute included legitimate children only under the *nullius filii* doctrine. The statute at that time contained no definition of the word or term "child" or "children". (It may be of

11. "If, therefore, plaintiff's right of action herein depended upon his right to inherit from his father, the argument advanced by the interveners would be pertinent. But it has been definitely held in this state, as in other jurisdictions, that in cases such as this, involving the rights to the proceeds of a life insurance policy, the law of contracts and not the law of inheritance is controlling; that beneficiaries under an insurance policy take by virtue of the contract of insurance rather than by the laws of succession; and that the law of descents and distributions has no applicability to such cases. * * * As declared by section 1644 of the Civil Code: 'The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed' * * * and clearly the ordinary and popular sense in

which the word child (the singular of children) is understood is as defined in the dictionaries, to-wit: a son or daughter; a male or female in the first degree; the immediate progeny of human parents (Webster's Dictionary); the offspring, male or female of human parents (Standard and Oxford Dictionaries). No distinction is drawn between legitimate and illegitimate offspring. It is quite true that in the law dictionaries the technical legal definition of 'child' is restricted to conform to the common law definition, that is, to legitimate children; but * * * in construing beneficiary clauses of insurance contracts the technical definitions found in law dictionaries of the different human relationships are not controlling." Turner v. Metropolitan Life Ins. Co., 1943, 56 Cal.App.2d 862, 865, 133 P.2d 859, 860.

However, 1 Bouv. Law Dict., Rawle's Third Revision, p. 479, defines the word "child" as "The son or daughter, in relation to the father or mother."

some significance to note that the citizenship statute now contains a definition of the term "child" specifically confining the term to legitimate or legitimated children. No such change has ever been made in the Copyright Act.)

The appeal in Ng Suey Hi v. Weedin, 9 Cir., 1927, 21 F.2d 801, was of similar import and was decided a year earlier, the same judges sitting. The opinion contains reference to the *nullius filii* doctrine and to the English holding under St. 4 Geo. 11 c. 21, and to the United States State Department's holding that Section 1993 does not exclude legitimated children. The Louie Wah You case decided, subsequent to the Ng Suey Hi case, that unless the appellant had been legitimated by California law, he was not a citizen. Thus, although each of these decisions appears upon its face to be contrary to the basic reasoning that the *nullius filii* doctrine ' applies only to matters of inheritance, we do not think that doctrine was so squarely considered and met in either case as to require us to hold that it applies in our case under the principle of *stare decisis*.

The authorities are not all in agreement. However, it cannot be denied that the harsh English common law as to illegitimates has been modified in many, if not all, of the states including the State of California, the residence of all parties here concerned.

■ We think and hold that since the federal statute providing for renewal of the copyright has nothing to do with inheritance or the succession in ownership of property, and actually provides for a new right of property which right is excluded from entering into the status of an inheritance, that there is no reason in the claimed limitation of the meaning of the word "child" or "children" to legitimates in the Copyright Act. And that these words in the Act should be given their ordinary *live*-language meaning in the instant case.

It follows, therefore, that Stephen William Ballentine, although the illegitimate child of George G. DeSylva, the author, and of Marie Ballentine, the plaintiff-mother, and although never legitimated, is, along with the widow of George G. DeSylva, Marie DeSylva (defendant-widow), entitled to a share of the benefits derived and to be derived from the copyright renewals made by the surviving spouse, or by the said child, and an accounting should be had for monies had and received.

The prayer of the plaintiff-mother of Stephen William Ballentine for a declaration of rights and for an accounting should be granted, all in accordance with the foregoing opinion.

Reversed and remanded.

JAMES ALGER FEE, Circuit Judge (dissenting).

This cause should be remanded to the District Court with direction to dismiss.

There is no diversity of citizenship and no suit for accounting can be entertained in the national courts between citizens of California, without more. Although it is obvious that this is not a suit for infringement, it is urged that there is jurisdiction because it is a civil action arising under an "Act of Congress relating to copyrights."

The acts of Congress which relate to this particular situation provide that a "person may obtain registration of his claim to copyright by complying with the provisions of this title," 17 U.S.C.A. § 11. Plaintiff has not alleged any compliance with the provisions of the title. She is not, nor is her ward, the author or composer of the works in question. At the outside then, plaintiff claims that Stephen William Ballentine has a right to register as part owner of a renewal of a copyright. The statute in this regard provides: " * * * the widow, * * * or children of the author, if the author be not living, * * * shall be entitled to a renewal * * * *when application for such renewal and extension shall have been made* to the copyright office and duly registered therein." 17 U.S.C.A. § 24. (Emphasis added.)

There is no allegation in the complaint that Stephen William Ballentine or any-

one in his behalf has applied for registration of renewal or any interest therein to the copyright office. Therefore, no justiciable claim or action arising under an act of Congress relating to copyright is involved or set up.

In the second place, this failure to apply for registration indicates that Stephen William Ballentine or his guardian failed to exhaust his remedies in the administrative field, and therefore, even if there be jurisdiction, no action lies until he has applied for registration of renewal of copyright or an interest in renewal.

The jurisdiction and discretion here is committed to the copyright office, and the court should not interfere until that office has made a determination. The mere fact that plaintiff may fear that the copyright office would not grant an interest in the renewal is no reason to allow her to seek a primary remedy in the courts.

The commitment to the copyright office is positive and exclusive. The same statute provides:

"* * * the register of copyrights * * * shall, under the direction and supervision of the Librarian of Congress, perform all the duties relating to the registration of copyrights." 17 U.S.C.A. § 201.

As noted above, a person may obtain registration by complying with the provisions "* * * and upon such compliance the Register of Copyrights shall issue to him the certificates". 17 U.S. C.A. § 11. Under the very section under which this claim is now urged in the court, it is provided, when application for such renewal shall have been made to the copyright office "and duly registered therein", a child of the author under appropriate conditions "shall be entitled to a renewal". 17 U.S.C.A. § 24.

In Bouve v. Twentieth Century Fox, 74 App.D.C. 271, 122 F.2d 51, 53, it is said:

"It seems obvious, also, that the Act establishes a wide range of selection within which discretion must be exercised by the Register in determining what he has no power to accept."

The case just cited expressly holds that such discretion is not uncontrolled, but that the Register is an officer whose acts are subject to judicial review and correction. 122 F.2d at page 54.

In view of this situation, even if this Court were to reverse the decree and direct that the trial court enter a declaration that plaintiff is entitled to an interest in the copyright, the Register of Copyrights would not necessarily be bound by the determination made in a proceeding where his act was not subject as yet to judicial review. Probably, if Stephen William Ballentine filed an application in accordance with the statute, the Register of Copyrights might refuse to register such a claimed interest irrespective of our direction to hold any accounting. We have heretofore questioned the right of administrative bodies to refuse to follow our opinions. But the cure for that is not to make determination until the administrative process is finished. In such a case, review can be had under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., after final action has been taken. What the guardian is asking is that she win the case before it is commenced.

Mr. Justice Jackson said in Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291, that judicial pronouncements under such circumstances are improper:

"* * * the courts * * * must be alert to avoid imposition upon their jurisdiction through obtaining * * * premature interventions, especially in the field of public law." 344 U.S. at page 244, 73 S.Ct. at page 240.

"* * * the declaratory judgment procedure will not be used to preempt and prejudge issues that are committed for initial decision to an administrative body * * *. Responsibility for effective functioning of the administrative process can not be thus transferred from

the bodies in which Congress has placed it to the courts." 344 U.S. at page 246, 73 S.Ct. at page 241.

A clear statement of the situation in which the court would find itself is found in Minneapolis Grain Exchange v. Farmers Union Grain Terminal Association, D.C., 75 F.Supp. 577, 582:

"* * * the decision of this Court will not be final because of certain exclusive powers possessed by the administrative agency, it seems only wise and just, as well as realistic, that this Court should refer the matter to the administrative agency by declining to grant a declaratory judgment."

The grants of patents and of copyrights stem from the same clause of the Federal Constitution:

"To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries". Art. I, Sec. 8.

It is obvious that, under the patent section, one can bring an action for infringement. But the writer has never found or heard of any case wherein one claiming to be the joint inventor was allowed to bring suit against the person who had obtained the patent without proceeding in the patent office. Finally, a suit for accounting will not lie, generally speaking, between joint owners of a patent even though their rights have been established by the grant. This is a matter of substantive law. In Talbot v. Quaker-State Oil Refining Co., 3 Cir., 104 F.2d 967, a joint owner of a patent granted license without obtaining consent of his joint owner. It was there held that accounting would not be allowed and that the holding of the state court that one co-owner had licensed the use of the patent to another without consent of the other owner was res adjudicata and therefore no suit lay for infringement of the license. It has been held that the granting of a patent to two persons vests each with an undivided half interest, creating the relation of co-tenants between them, so that each becomes entitled to use the invention without accounting to the other. Drake v. Hall, 7 Cir., 220 F. 905, 906; Blackledge v. Weir & Craig Mfg. Co., 7 Cir., 108 F. 71, 76. The same principles had been previously applied specifically to copyrights in the case of Carter v. Bailey, 64 Me. 458, 463. This last case was tried in the state court.

It would seem that these matters are conclusive upon us and that there was no ground whatsoever of jurisdiction until the statutes had been complied with and the copyright office had either granted or refused registration of the interest of Stephen William Ballentine in the renewals.

Furthermore, it seems that, if the best face is put upon the matter, still the complaint does not state a claim upon which relief can be granted or, as we used to say, there is no cause of action set up. In any event, I think it was an abuse of discretion for the trial court to attempt to give declaratory relief in a field so beset with questions going to the primary right as this. 28 U.S.C.A. §§ 2201, 2202.

The opinion of the majority passes these matters over without consideration. If the direction to the trial court be carried out and an accounting had, this whole series of questions can be raised. Proper administration indicates that, since the administrative process plays such a great part in modern governmental structure, the courts should not encroach upon the severely limited field in which such bodies operate. Salmon Bay Sand & Gravel Co. v. Marshall, 9 Cir., 93 F.2d 1; O'Leary v. Dielschneider, 9 Cir., 204 F.2d 810. But it is a useless gesture to direct the trial court to hold an accounting. After trial is had, these questions can all again be raised by either party. There is no security in judgment, even when it has attained apparent finality. Rights should not be declared under Federal Declaratory Judgments Act unless the determination will be of practical help in ending the controversy.