Thomas A. Aurelio, J.
Frederick Faust, writing under the pseudonym Max Brand, was the author and copyright owner of a work entitled “ Destry Bides Again,” published originally in 1930.
In August, 1931 Faust assigned the motion picture rights in the work to Universal Pictures Corporation for $1,650.
Faust also agreed by that instrument to renew or procure the renewal of the copyright before the expiration of the original term of 28 years and to assign to Universal the rights in the renewal earlier granted by the 1931 instrument. Section 24 of title 17 of the United States Code (Copyright Law) provides that renewal is available only during the last year of the original term, by the author, or if deceased, by the widow, widower or children if living, or the author’s executors or next of kin.
In 1944, Faust died and by his will he named Dorothy Faust, his wife, as sole legatee, devisee and beneficiary, and by order of the California Superior Court she was named sole distributee of his property.
In 1951, the copyright still being in force, Dorothy Faust, by irrevocable instrument of trust, granted to County National Bank and Trust Company of Santa Barbara as trustee all her right, title and interest in and to all copyrights on the works of her late husband. The income from the trust was to be paid half to Mrs. Faust; the remaining half to be equally divided among the three Faust children, who are the plaintiffs in this action.
By that instrument of trust Mrs. Faust also conveyed to the bank the right to apply for any renewal of copyright, which might accrue “ to Dorothy Faust or to any of the beneficiaries .[Dorothy and the children] in the name of Dorothy Faust and/or said beneficiaries who have by their acceptance of this trust ratified and approved this power and authority.”
*408 While it has since been determined (De Sylva v. Ballentine, 351 U. S. 570, 573 et seq. [1956]) that the widow and children share, as a class, the author’s right to renewal, it was not at all clear in 1951 that anyone but the widow, if surviving, succeeded to the renewal right, to the exclusion of children. In the very Be Sylva case, the learned District Judge so held. (See, e.g., Ballentine v. De Sylva, 226 F. 2d 623-625 [C. A. 9th, 1955]. See, also, to the effect that the widow’s right was exclusive of the children’s, Nicholson, A Manual of Copyright Practice, 1945, p. 195; 18 C. J. S., Copyright and Literary Property, § 79, p. 204, cited in Ballentine v. De Sylva, supra, pp. 627-628.)
Nevertheless, the 1951 agreement had prefixed to it a ratification and confirmation by all three children, these plaintiffs.
In 1952 the bank assigned to Universal Pictures Company, Inc., this defendant, successor in interest to Universal Pictures Corporation, Faust’s original assignee, all rights acquired by it with respect to “ Destry Bides Again” by virtue of the trust agreement, for the sum of $4,500.
Affixed to this agreement, too, is the consent of Mrs. Faust and all of the children, these plaintiffs.
The consent is in the broadest terms. It sets forth that they jointly and severally confirm all the rights, licenses and privileges granted and assigned to Universal Pictures Company, Inc. for and during the renewal term and in the event the trust is not in existence or is powerless to renew said copyright then each of the consenting parties, i.e., the widow and the children, agrees to renew it and assign it to Universal and agrees to execute all documents that Universal may request to effectuate the assignment.
In 1957 Universal renewed the copyrights with the Copyright Office in the names of Dorothy Faust and the three plaintiffs, as it is conceded Universal had the right to do, and then requested from Mrs. Faust and the children an assignment of their now matured rights to the renewal.
Correspondence ensued as to whether the widow and children, as a class, had agreed to transfer (a) all their right in the work, or (b) sole and exclusive motion picture rights to the work. It was not, however, until over a month after Mrs. Faust died, and in May, 1960, that it was first asserted on behalf of the children that the trust involved only Mrs. Faust’s interest.
This litigation ensued.
The complaint, containing three causes of action, sought, respectively, declaratory judgment, an accounting, and damages, against Universal Pictures Company Inc. and MCA, Inc.* The *409 damages were alleged to have resulted from waste alleged to have been committed by Universal in its grant of a license to make television films from the subject work to MCA. This cause of action was withdrawn at the beginning of the trial.
Universal, in its answer, denied the material allegations of the complaint mth respect to the intent of the parties, leaving the interpretation of the documents to the court. It also asserted by way of defenses insufficiency of the complaint; that the causes of action arose in California and therefore the court should decline to take jurisdiction; estoppel; and that the first cause of action fails to set forth a justiciable controversy.
Counterclaims are set forth for declaratory judgment in favor of defendant Universal, mandatory injunction, damages, and, in the event the court finds that the writing marked Exhibit B (the assignment) does not effect the transfer to Universal of the sole and exclusive rights to “ Destry Rides Again ”, reformation.
The answer of MCA is identical with Universal’s except that it contains no counterclaims.
Both sides waived findings of fact and conclusions of law. The case was tried to the court, without a jury, on February 8, 1968.
In this posture of the case the court finds for the defendants.
I.
An instrument must be construed according to the intent of the parties at the time it was drawn. The state of the law with respect to its subject matter is a material factor in ascertaining such intent. (Battaglia v. General Motors Corp., 169 F. 2d 254 [C. A. 2d, 1948], cert. den. 335 U. S. 887 [1948].)
Here it appears that the law in 1951 and 1952 was not clear because of the disjunctive “ or ” in the statute, but a prima facie reading of the statute (U. S. Code, tit. 17, § 24) indicated that the widow had the sole inchoate right to renewal and, accordingly, sole right to assign.
Therefore, the children’s signatures were affixed not as necessities, but rather to be sure that if Mrs. Faust predeceased, as she did, they too would execute any instruments necessary to complete the assignment, and they understood that Universal was, in any event, to be the ultimate assignee of all renewal rights.
No special instrument of assignment from the children was needed in 1951-1952 because they had, in fact, as the law then appeared to be, nothing to assign.
If, as they now assert, post-Mrs. Faust’s death, they knew they had a bundle of rights dehors Mrs. Faust’s rights, the effect *410 of their consent could have been either (a) that they concurred in their mother’s release to the bank in irrevocable trust for them of half of her own share, in which event their consent would thus have been supererogatory; or (b) that they clearly intended to convey to the bank, and to Universal, their own inchoate share. This is the ultimate view taken by defendants.
The only other understanding of the documents by which their consent takes on meaning is that while the Copyright Law was uncertain as to whether or not widow and children had the inchoate right of renewal as a class, they were asked to and did consent; so that beyond what was conveyed in trust they intended to assign their own individual rights to renewal to Universal, no matter how the law might ultimately be interpreted.
II.
This conclusion flows likewise from the fact that Mrs. Faust was named by her husband as sole legatee and by the California court as sole distributee.
III.
The language of the consents is, in my opinion, clear, broad and unambiguous, leaving no room for interpretive reading.

IV.

For the assignment of the original copyright the consideration paid by Universal was $1,650. In view of the decreased value of the dollar, the $4,500 paid for the assignment of the renewal right would seem to be a fair price. That the $4,500 was intended, in 1952, however, to be in payment for only a portion of the renewal rights, the original of which had been assigned for $1,650, borders, in my opinion, on the incredible.
V.
We come finally to the defense of estoppel, the effect of which in this situation is to prevent one party to a litigation from taking a new approach to a situation after there has been an unalterable change in their respective positions.
The unalterable change here is the death of Mrs. Faust, who would have been ideally in a position — if not precluded by the parol evidence rule — to testify as to the intent of the documents.
These plaintiffs sat by during three years of negotiations and never raised the question until after her death. In the opinion of the court, they are precluded from raising it now.

 MCA, Inc. is a Delaware corporation of which Universal is a subsidiary.